[Cite as *State v. Clark*, 2013-Ohio-300.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN   COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 2011-CA-32 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case Nos. 2008-CR-321 |
| v. | : | 2011-CR-223 |
| | : | |
| JORDAN J. CLARK | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 1st day of February, 2013.

. . . . . . . . . . .

KEVIN S. TALEBI, Atty. Reg. #0069198, Champaign County Prosecuting Attorney, 200 North Main Street, Urbana, Ohio 43078
  Attorney for Plaintiff-Appellee

ROBERT ALAN BRENNER, Atty. Reg. #0067714, Post Office Box 341021, Beavercreek, Ohio 45434
  Attorney for Defendant-Appellant

. . . . . . . . . . . .

FAIN, P.J.

{¶ 1} Defendant-appellant Jordan J. Clark appeals from his conviction and sentence

for Safecracking, Breaking and Entering, Burglary and Grand Theft (motor vehicle).    Clark

contends that the trial court erred in sentencing him to maximum and consecutive sentences. He further contends that the trial court erred by accepting his guilty plea to the charge of Safecracking and by failing to sua sponte vacate the plea. Finally, Clark contends that he was denied the effective assistance of counsel.

{¶ 2} We conclude that the trial court did not err in imposing sentence. We further conclude that the trial court did not err either in accepting the guilty plea, or in failing to vacate the plea, with regard to the Safecracking charge. Finally, Clark's claim of ineffective assistance of trial counsel is not supported by the record. Accordingly, the judgment of the trial court is Affirmed.

## I. Facts

{¶ 3} On August 1, 2011, Clark and two accomplices, Lee and McGuffey, made plans to break into the Urbana City Pool. Clark and McGuffey drove to the area and dropped off Lee who proceeded to break into the building. Clark and McGuffey later returned to pick up Lee, who had taken money and food.

{¶ 4} On August 4, 2011, Clark, McGuffey, Lee and a fourth man, Dunham, worked together to break into a residence, owned by the Hensons, while its owners were on vacation. Clark and Mcguffey monitored police activity while the other two broke into the home. Afterwards, Clark and McGuffey drove back to pick up the two men who had taken items from the home. Later, Clark, Lee and McGuffey decided to return to the same house and steal a vehicle. Clark and Lee entered the house and took the keys to the vehicle. Then the three men took turns driving the vehicle while damaging local mailboxes. Ultimately the car

was wrecked, and the three men returned home.

{¶ 5}   Clark was involved in opening a safe that Lee, Dunham and McGuffey had stolen from a residence owned by Peggy Cauley on August 6.   On August 7, he participated in breaking into and entering the Mad River Farm Market and the Terre Haute Grocery.

## II. The Course of Proceedings

{¶ 6}   The Champaign County Grand Jury returned a twenty-count indictment against Jordan Clark.   The counts included:   three counts of Breaking and Entering, in violation of R.C. 2911.13, felonies of the fifth degree; three counts of Theft, in violation of R.C. 2913.02, a misdemeanors of the first degree; two counts of Burglary, in violation of R.C. 2911.12(A)(3), felonies of the third degree; one count of Grand Theft, in violation of R.C. 2913.02, a felony of the fourth degree; one count of Grand Theft of a Motor Vehicle, in violation of R.C. 2913.02, a felony of the fourth degree; six counts of Criminal Damaging, in violation of R.C. 2909.06, misdemeanors of the second degree; three counts of Receiving Stolen Property, in violation of R.C. 2913.51(A), misdemeanors of the first degree; and one count of Safecracking, in violation of R.C. 2911.31(A), a felony of the fourth degree.

{¶ 7}   Clark pled guilty to the three counts of Breaking and Entering, one count of Burglary, one count of Grand Theft, one count of Grand Theft of a Motor Vehicle, six counts of Criminal Damaging, and one count of Safecracking.   The remaining seven counts of the indictment were dismissed with prejudice.   At his sentencing hearing, the trial court merged the counts of Burglary and Grand Theft [Counts Three and Four], and then sentenced Clark to a term of twelve months in prison on Count One, thirty-six months on Count Three, eighteen

months on Count Six, eighteen months for Count Fifteen, twelve months for Count Sixteen, and twelve months on Count Eighteen. The trial court also sentenced Clark to a term of 90 days in the Tri-County Regional Jail with regard to each of Counts Seven, Eight, Nine, Ten, Eleven and Twenty. The trial court stated that "all counts are concurrent confinement with each other except Counts One, Three, Six, Fifteen and Sixteen which are consecutive to each other. TOTAL SENTENCE - Eight (8) years to the Ohio Department of Rehabilitation and Corrections."

**{¶ 8}** The trial court stated the following:

The Court finds that the consecutive service is necessary to protect the public from future crime and to punish the Defendant and that consecutive sentences are not disproportionate to the seriousness of the Defendant's conduct and to the danger the Defendant poses to the public and the Defendant committed one or more of the multiple offenses while awaiting trial or under a community control sanction imposed pursuant to Ohio Revised Code 2929.16, 2929.17 or 2929.18 and at least two of the multiple offenses were committed as part of one or more courses of conduct and the harm caused by two or more of the multiple offenses was so great that no single prison term for any of the offenses adequately reflects the seriousness of the Defendant's conduct and the Defendant's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the Defendant. Dkt. 18, p. 5.

**{¶ 9}** From his conviction and sentence Clark appeals.

## II. The Trial Court Did Not Abuse its Discretion in Imposing Maximum, Consecutive

## Sentences on Certain Counts

{¶ 10}   Clark's First Assignment of Error states:

THE TRIAL COURT ERRED IN IMPOSING MAXIMUM CONSECUTIVE SENTENCES ON COUNTS I, III, XV, AND XVI.

{¶ 11}   Clark argues that the record does not support the imposition of maximum sentences with regard to Counts One, Three, Six, Fifteen and Sixteen.   Clark further contends that "an eight year aggregate prison term" is "too long, and the sentence imposes an unnecessary burden on state or local resources in violation of R.C. 2929.11(A)."

{¶ 12}     "A trial court has broad discretion in sentencing a defendant and a reviewing court will not interfere with the sentence unless the trial court abused its discretion."   *State v. Bray,* 2d Dist. Clark No. 2010CA14, 2011–Ohio–4660, ¶ 28.   The term "abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary or unconscionable.   *Hufman v. Hair Surgeon, Inc.,* 19 Ohio St.3d 83, 87, 482 N.E.2d 1248, 1252 (1985).

{¶ 13}   When reviewing a felony sentence, an appellate court must first determine whether the sentencing court complied with all applicable rules and statutes in imposing the sentence, including R.C. 2929.11 and 2929.12, in order to decide whether the sentence is contrary to law. *State v. Kalish,* 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124. If the sentence is not clearly and convincingly contrary to law, the trial court's decision in imposing the term of imprisonment must be reviewed under an abuse-of-discretion standard. *Id.*

{¶ 14}   The General Assembly, through the enactment of 2011 Am. Sub. H.B. 86, amended Ohio's sentencing statutes. Since H.B. 86 took effect on September 30, 2011 and Clark was sentenced on November 16, 2011, the trial court was required to sentence him

under the new statutes. Relevant to this appeal, the revisions under H.B. 86 now require a trial court to make specific findings when imposing consecutive sentences. Specifically, R.C. 2929.14(C)(4) provides as follows:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by

the offender.

{¶ 15} A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing which are "to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). A court imposing a sentence for a felony "has discretion to determine the most effective way to comply with the purposes and principles of sentencing set forth in section 2929.11 of the Revised Code." R.C. 2929.12(A).

{¶ 16} Clark contends that because he did not enter the Urbana Pool, the Mad River Farm Market or the Henson home, he should not have received the maximum sentences for these offense. He also contends that he did not drive the Henson vehicle and he should not have received the maximum sentence for that offense. Finally, he argues that he was not involved in the Cauley offense, and thus, should not have received the maximum possible sentence.

{¶ 17} In this case, prior to imposing sentence, the trial court reviewed the offenses, the pre-sentence investigation report, and statements made by Clark and his attorney. The court explained that it was imposing sentence after considering the purposes and principles of sentencing, as well as the seriousness and recidivism factors. The trial court noted that Clark had prior criminal convictions. He was, in fact, on community control at the time of the offenses in the case before us. Additionally, the court considered the extent of the damages to the victims.

{¶ 18} The record indicates that Clark was convicted of Breaking and Entering in

2008 and was sentenced to community control. Later that year he was convicted of Underage Consumption and Failure to Identify and was sentenced to serve one hundred and eighty days; the sentence was suspended. In April 2009, Clark was convicted of Theft and was sentenced to three years of community control. Thereafter, in August 2011, while on community control, Clark was involved in the series of offenses in the case before us.

{¶ 19} While Clark did not enter the Mad River Farmers Market or the Terre Haute Grocery, he was involved in the plans to break in, and was actively involved with transport and lookout responsibilities. Furthermore, the record reflects that he did enter the Henson home for the purpose of taking the keys to their vehicle. The record shows that he took turns driving the vehicle after stealing it. Finally, Clark was involved with Safecracking with regard to a safe stolen from the Cauley residence, although he was not involved in the initial offense of Breaking and Entering.

{¶ 20} Clark's sentence falls within the permissible statutory range. The trial court considered the factors set forth in R.C. 2929.14(C)(4) when deciding to impose consecutive sentences. Thus, the sentence is not clearly and convincingly contrary to law.

{¶ 21} In their briefs, both Clark and the State cite authority for the proposition that an appellate court may vacate consecutive sentences only if it clearly and convincingly finds that the record does not support the trial court's findings, or that the sentence is otherwise contrary to law. Because of Clark's criminal history of two prior felonies, the fact that he was under community control for another felony at the time of these offenses, and was actively involved in multiple offenses over the course of approximately a week, we do not clearly and convincingly find that the record does not support the trial court's findings with respect to the

imposition of consecutive sentences, or that the trial court abused its discretion by imposing the maximum sentences allowed. Accordingly, the First Assignment of Error is overruled.

## IV. The Trial Court Did Not Err in Accepting Clark's Plea of Guilty to Safecracking

{¶ 22}   Clark's Second Assignment of Error states:

THE TRIAL COURT ERRED IN IMPOSING A SENTENCE ON COUNT XV.

{¶ 23}   Clark contends that he was not involved in the offense committed against Peggy Cauley on August 6, 2011. Therefore, he claims that the trial court erred by failing to permit him to enter a plea pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162, with regard to that offense. In support, Clark makes references to several portions of the transcript of the sentencing hearing that he claims establish that the prosecutor stated that Clark was not involved in the Cauley offense. He also references the pre-sentence investigation report, in which he indicated that Lee had told him that Lee broke into Cauley's safe following the burglary of the house.

{¶ 24}   The prosecutor made the following statements during sentencing:

Fortunate for him, he was not involved in the Peggy Culley [sic] burglary that his co-defendant was.

* * *

Of that $4,040.12, $1,858.66 goes to Peggy – I'm sorry. That would be a mistake on the restitution figure. I think my Victim Advocate had indicated the Defendant's culpability for the Peggy Culley [sic] loss, and the Defendant

was not involved in the Peggy Culley [sic].

* * *

The reason for my pause is that when the Court was reviewing the sentence, it made me realize that when my Victim Advocate listed the Peggy Culley [sic] property, Count Fifteen, which is the safecracking, it indicates that contained within the safe was blank checks, a Lincoln Financial check, a life insurance document, and two rings. So I needed to go back to the prosecution report as well as comparing that to what Peggy Culley [sic] listed as her loss to see if any of the information it contained in Peggy Culley's [sic] victim impact statement would fall within the provisions of what was set forth in Count Fifteen.

And Peggy Culley [sic] claimed a loss for a PlayStation 3 and two Dell laptops. But did not make specific mention in her victim impact statement of the rings. So it was correct to list Peggy Culley [sic] as a victim. But as far as restitution goes, based on what was claimed by the victim, I don't believe that Mr. Clark should be responsible for that loss.

{¶ 25} From our reading of the entire transcript, the prosecutor here was merely indicating that Clark was not involved with the Cauley Burglary, was not charged with that Burglary, and therefore could not be held liable for restitution regarding the loss from the Burglary. However, as noted by the State, Clark was charged with Safecracking following the Burglary. Since Ms. Cauley did not seek restitution for the loss of the items contained within the safe, the prosecutor acknowledged no restitution could be awarded with regard to

the Safecracking charge. We do not read the above-quoted colloquy as indicating that Clark was not involved with the Safecracking offense.

{¶ 26} Also, the pre-sentence investigation report was generated, and the sentencing hearing was held, after the plea hearing. Therefore, none of that information was available to the trial court when it accepted Clark's plea. At the plea hearing the following colloquy took place with regard to that count:

THE COURT: Count 15, safe cracking, are you admitting you committed that crime as a fourth degree misdemeanor because you did on or about August 6, 2011, in Champaign County, Ohio, with purpose to commit an offense knowingly force an entrance into or tamper with any vault, safe or strong [sic] with was Peggy Cauley's safe containing Peggy Cauley's Security Bank checks, Lincoln Financial check, life insurance documents and two rings?

DEFENDANT CLARK: Yes, sir.

{¶ 27} A guilty plea must be knowingly, intelligently, and voluntarily made In order to satisfy the requirements of due process. *Boykin v. Alabama,* 395 U.S. 238, 242–243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). The plea must be made with a full understanding of its consequences. *State v. Bowen,* 52 Ohio St.2d 27, 28, 368 N.E.2d 843 (1977). Before accepting a guilty plea, a trial court must substantially comply with the requirements of Crim.R. 11. *State v. Nero,* 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *Id.*

{¶ 28} We conclude that the trial court did substantially comply with Crim.R. 11.

A review of the entire plea hearing transcript demonstrates that the trial court informed Clark of the facts underlying the charges against him, the maximum sentence that he faced, and the constitutional rights that he waived by pleading guilty. Prior to accepting the plea, the trial court asked Clark whether he understood what he was doing, whether he was acting of his own free will and not as the result of any promises aside from those incorporated in the plea agreement, and whether he wanted the court to accept the plea. Clark responded to these questions in the affirmative. He acknowledged that he had discussed his case with his attorney. The court asked Clark whether there was any reason that he should not be found guilty, to which he responded negatively.

{¶ 29} At no time during the plea proceedings did Clark indicate that he was not guilty of the offense of Safecracking, as charged in Count Fifteen of the indictment. The trial court had no information before it to indicate otherwise, and nothing in the record up to that point, including the plea colloquy, gives rise to an inference that Clark was not guilty of the crime of Safecracking as charged. In determining the propriety of the trial court's acceptance of Clark's plea, we cannot consider information that was not before the trial court at that time. Therefore, we find no error in the trial court's acceptance of the plea.

{¶ 30} Clark's Second Assignment of Error is overruled.

## IV. The Trial Court Did Not Err by Failing to Vacate the Plea
## of Guilty with Regard to the Charge of Safecracking

{¶ 31} Clark's Third Assignment of Error states:

THE TRIAL COURT ERRED WHEN IT FAILED TO VACATE JORDAN'S PLEAS.

{¶ 32} Clark contends that the trial court should have vacated his guilty plea, sua sponte, regarding to the Safecracking charge in Count Fifteen of the indictment. He again relies upon the above-quoted statements of the prosecutor at the sentencing hearing and the statement in the pre-sentence investigation report indicating that Lee broke into the Cauley safe.

{¶ 33} The plea hearing transcript establishes that the trial court complied with Crim.R. 11 in ascertaining that Clark was making his plea knowingly, voluntarily and intelligently. Clark did not object, or move to vacate the plea at any time prior to appeal. Nor did he make any protestations of innocence other than a comment in the pre-sentence investigation report that Lee had told him that Lee had broken into the Cauley safe. We presume that the trial court was aware of this statement at the time of sentencing, since the trial court indicated that it had reviewed the pre-sentence investigation report.

{¶ 34} Thus, the question is whether the trial court, based upon the statement in the pre-sentence investigation report, should have vacated Clark's plea of guilty to the Safecracking charge sua sponte, in the absence of a motion seeking to vacate. The Eighth District Court of Appeals has addressed this issue in *State v. Millhouse*, 8th Dist. Cuyahoga No. 79910, 2002-Ohio-2255, ¶ 27, stating:

> Our review of the Rules of Criminal Procedure reveals no provisions which would suggest that a trial court should sua sponte vacate a guilty plea once it has been accepted; rather, it is Crim.R. 32.1 which provides for the

withdrawal of guilty pleas upon proper motion. Here, because no such motion had been presented to the trial court at the time of sentencing, we are unable to find error in this regard. Further, had the court sua sponte vacated his pleas at sentencing as [the defendant] now urges, he could have easily claimed that the trial court denied him the benefit of his bargain and then challenged on appeal that uninvited judicial action. See also, *State v. Heslop*, 7th Dist. Belmont No. 11-BE-19, 2012-Ohio-5118.

{¶ 35} We agree. In light of the lack of a motion to vacate, and the fact that Clark's plea was knowingly, voluntarily and intelligently made, and that at no time during the plea hearing did Clark or his counsel protest innocence regarding this charge, we cannot say that the trial court erred by failing to sua sponte vacate the plea of guilty to the charge of Safecracking. Accordingly, Clark's Third Assignment of Error is overruled.

## V. The Record Fails to Establish Clark's Claim
## of Ineffective Assistance of Counsel

{¶ 36} Clark's Fourth Assignment of Error states:

JORDAN CLARK WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 37} Clark contends that his counsel was ineffective because he permitted Clark to enter a guilty plea to, and be sentenced on, the charge of Safecracking despite his claim that he did not commit the offense.

{¶ 38} A claim of ineffective assistance of trial counsel requires both a showing that

trial counsel's representation fell below an objective standard of reasonableness, and that the defendant was prejudiced as a result. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A reviewing court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The prejudice prong requires a finding that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, with a reasonable probability being "a probability sufficient to undermine confidence in the outcome." *Id.* at 694. *See also State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).

{¶ 39}   In support of this argument, Clark again relies upon the statements made by the prosecutor at the sentencing hearing, quoted in Part III, above, as well as a statement in the pre-sentence investigation report. Again, the prosecutor merely commented that Clark did not burglarize the Cauley home, and that he was charged only with Safecracking with regard to Cauley. This is not inconsistent with Clark's guilt on that charge.

{¶ 40}   The pre-sentence investigation report does indicate that Clark informed the author of the report that Lee had "told him that he broke into the safe." However, without more, we cannot say that trial counsel was ineffective. Clark and counsel may have discussed the matter and decided that it was best to accept the plea agreement as offered. Or Clark may have informed counsel that the statement in the report was inaccurate. There is no indication in this record that counsel was not aware of the statement or that counsel failed to exercise sound discretion regarding the plea to this charge. Therefore, we have no basis for finding ineffective assistance of counsel.

{¶ 41}   Clark's Fourth Assignment of Error is overruled.

## VI. Conclusion

{¶ 42}   All of Clark's assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

DONOVAN and HALL, JJ., concur.

Copies mailed to:

Kevin S. Talebi
Robert Alan Brenner
Hon. Roger B. Wilson