[Cite as *State v. King*, 2013-Ohio-2021.]

IN THE COURT OF APPEALS FOR CLARK COUNTY, OHIO

STATE OF OHIO

      Plaintiff-Appellee

v.

JAYMALI KING

      Defendant-Appellant

| | |
|---|---|
| C.A. CASE NOS. | 2012-CA-25/<br>2012-CA-26 |
| T.C. CASE NOS. | 12-CR-66<br>12-CR-113 |

(Criminal appeal from
 Common Pleas Court)

. . . . . . . . . . .

## **O P I N I O N**

Rendered on the    17th    day of     May    , 2013.

. . . . . . . . . . .

D. ANDREW WILSON, by LISA M. FANNIN, Atty. Reg. #0082337, Clark County Prosecutor's Office, 50 E. Columbia Street, P.O. Box 1608, Springfield, Ohio 45501
      Attorney for Plaintiff-Appellee

JENNIFER S. GETTY, Atty. Reg. #0074317, 46 E. Franklin Street, Dayton, Ohio 45459
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1}    Jaymali King pled guilty in the Clark County Court of Common Pleas to failure to comply with the order or signal of a police officer, two counts of having weapons while under disability, and possession of oxycodone in Clark C.P. No. 12CR66, and to possession of heroin in Clark C.P. Case No. 12CR113.   The trial court sentenced him to an aggregate term of ten years in prison, a lifetime driver's license suspension, and court costs.

{¶ 2}    King appeals from his convictions, claiming that he was denied the effective assistance of trial counsel during the plea bargaining process and that the trial court erred and abused its discretion by imposing an excessive sentence.   He also contends that his two convictions for having weapons while under disability are allied offenses of similar import, which should have been merged during sentencing.

{¶ 3}    We conclude that defense counsel's conduct did not constitute ineffective assistance of counsel and that the trial court did not err or abuse its discretion in selecting the length of King's sentences or in running those in Case No. 12CR66 consecutively.   However, we agree with King that his two convictions for having weapons while under disability were allied offenses of similar import.   Accordingly, the trial court's judgment will be affirmed in part, reversed in part, and remanded for the merger of allied offenses of similar import.

## I. Facts and Course of Proceedings

{¶ 4}    In the early morning of December 25, 2011, Jaymali King engaged in a low-speed car chase with police officers in the City of Springfield, Clark County, Ohio.   The chase began when police officers observed King's vehicle make an illegal U-turn and signaled him to stop.   Instead of stopping, King continued driving erratically until he wrecked his vehicle into a

telephone pole. King ran from the wreckage in an attempt to flee; the officers chased him on foot and caught him.

{¶ 5} After King's apprehension, the officers searched his vehicle and found a gun. The officers performed a pat-down on King, and initially found no contraband on his person. King began to act as if he were in medical distress, so the police officers took him to the hospital. The hospital staff discovered that he was carrying forty pills of oxycodone.

{¶ 6} Before taking King to the police department, the police officers asked him whether he had any other contraband. King did not respond. At the police department, the police officers performed another pat-down and discovered that he was carrying less than one gram of suspected heroin. Before moving King to jail, the officers asked again whether he had any other contraband. After the officers warned him of additional charges for conveyance into a detention center, King produced a second gun that he was carrying inside the sleeve of his bulky jacket. At the time of this incident, King was on post-release control and was legally prohibited from possessing a firearm.

{¶ 7} On January 30, 2012, King was indicted for failure to comply with the order or signal of a police officer, two counts of having weapons while under disability, improper handling of a firearm in a motor vehicle, possession of oxycodone, and possession of a deadly weapon while under detention. King was not immediately charged with possession of heroin, since the suspected heroin was sent to a laboratory for testing.

{¶ 8} On February 6, 2012, an assistant county prosecutor offered defense counsel the opportunity for King to receive 7½ years in prison in exchange for King's pleading guilty to the first five counts against him. The offer did not address the potential possession of heroin offense

(for which King had not yet been indicted), and it had no stated expiration date. Within a day or two, defense counsel visited King at the jail and transmitted the offer to him. Counsel told King to think about the offer and advised King that he (counsel) would be back to find out whether King wanted to accept it.

{¶ 9} On February 21, 2012, after laboratory testing confirmed that the substance King was carrying was heroin, King was indicted for possession of heroin in a separate case. The two cases were consolidated. King was arraigned on the heroin charge on February 24, 2012, but there is no indication in the record whether King discussed the State's plea offer with his attorney at that time.

{¶ 10} On Thursday, March 1, 2012, the same prosecutor e-mailed defense counsel requesting a general status update on the offer. Due to personal issues at home, defense counsel was rarely in the office and did not see the e-mail. The e-mail did not mention any deadline or consequence for failing to respond.

{¶ 11} On Monday, March 5, 2012, Andrew Wilson, the county prosecutor, sent a written memorandum to defense counsel, revoking the offer of 7½ years. The memorandum stated in pertinent part:

> It is my understanding that Andrew Picek [an assistant prosecutor] has
> previously extended a plea offer to Jaymali King involving an agreed sentence of
> 7 and a half years. It is also my understanding that as of today, the Defendant has
> not accepted that offer. After having further prepared the case, reviewed the
> surveillance video, and talked to the officers involved, that offer is now revoked.

The memorandum also included a second offer to dismiss the count for improper handling of a firearm in a motor vehicle and the count for possession of weapons while under detention if King

agreed to plead guilty to the remaining counts without a stipulated sentence.

{¶ 12}    Defense counsel advised King of the revocation, and King told him that he still wanted to accept the 7½ years.  Defense counsel tried to accept the former 7½-year plea offer, but the State declined.

{¶ 13}    On March 9, 2012, King pled guilty to failure to comply with the order or signal of a police officer, two counts of having weapons while under disability, and possession of oxycodone in Case No. 12CR66, and to possession of heroin in Case No. 12CR113.   The State agreed to dismiss the remaining counts in Case No. 12CR66.  A presentence investigation was conducted, and a sentencing hearing took place on March 30, 2012.

{¶ 14}    During the sentencing hearing, defense counsel argued that he had provided ineffective assistance by failing to revisit King before the State's first offer of 7½ years was revoked.  The State responded by stating its belief that delaying the acceptance of an offer is a plea bargaining technique that is regularly implemented by defense attorneys, including King's defense counsel.  The State claimed that it can be an effective way to get a better offer if prosecutors do not want to go to trial.  The trial court found that defense counsel had not been ineffective.

{¶ 15}  In Case No. 12CR66, the trial court sentenced King to one year in prison for failure to comply, three years each for the two having weapons while under disability offenses, and three years for possession of oxycodone, to be served consecutively, for an aggregate sentence of ten years in prison.  The court imposed a mandatory driver's license suspension for the failure to comply charge due to a prior offense for failing to comply.  The court ordered King to pay court costs and indicated that King would receive jail time credit for time served in the

Clark County Jail.

{¶ 16}  In Case No. 12CR113, the trial court imposed a twelve-month sentence for possession of heroin and ordered it to run concurrently with the sentences in Case No. 12CR66. The court imposed a one-year driver's license suspension for possession of heroin, and it ordered King to pay court costs.

{¶ 17}  At the request of defense counsel, the trial court did not impose a penalty for King's violation of post-release control and decided, instead, to leave that decision to the parole board.

{¶ 18}  King appeals from the trial court's judgment, claiming that his counsel rendered ineffective assistance and that his sentence was excessive.  After a preliminary review of the record, this Court issued a Decision and Entry ordering the parties to simultaneously submit supplemental briefs on whether King's two convictions for having weapons while under disability were allied offenses of similar import.  Both parties timely filed supplemental briefs. We will address King's arguments in an order that facilitates our analysis.

## II. Ineffective Assistance of Trial Counsel

{¶ 19}  In his first assignment of error, King claims that he "was denied his constitutional rights to effective assistance of trial counsel."  King contends that his attorney acted deficiently by failing to consult with him in jail before the State revoked its first plea offer.  King argues that his counsel's untimeliness precluded him from accepting a more advantageous plea bargain and caused him to be sentenced to an extra two and one-half years in prison.

{¶ 20}  We review alleged instances of ineffective assistance of trial counsel under the two prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80

L.Ed.2d 674 (1984), and adopted by the Supreme Court of Ohio in *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Pursuant to those cases, trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland*, 466 U.S. at 688. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his or her errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. *Id.*

{¶ 21} To support his argument that defense counsel's performance fell below an objective standard of reasonableness, King relies on *Missouri v. Frye*, ___ U.S.___,132 S.Ct. 1399, 1405, 182 L.Ed.2d 379 (2012), which held that, as a general rule, "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Id.* at 1408. The Court's decision was based on "[t]he reality * * * that plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages." *Id*. at 1407.

{¶ 22} In *Frye*, defense counsel had received a letter from the prosecutor offering a choice of two plea bargains. The offers were for a sentence substantially less than what the defendant otherwise faced; both of the offers had an expiration date. *Id.* at 1404. Defense counsel never advised his client of the offers, and they expired. *Id*. The defendant eventually pled guilty and was sentenced to the lengthier sentence.

{¶ 23} The Supreme Court concluded that, "[w]hen defense counsel allowed the offer to expire without advising the defendant or allowing him to consider it, defense counsel did not

render the effective assistance the Constitution requires." *Id.* at 1408. The Supreme Court declined, however, "to try to elaborate or define detailed standards for the proper discharge of defense counsel's participation in the process." *Id.* In this regard, the Court reasoned that elaboration would be neither "prudent nor practicable" because "[t]he alternative courses and tactics in negotiation are so individual." *Id.*

**{¶ 24}** *Frye* is factually distinguishable from the present case. Unlike *Frye*, defense counsel advised King of the 7½-year plea offer, and he did not fail to meet any deadlines. Accordingly, the facts in *Frye* do not directly offer assistance in resolving this matter.

**{¶ 25}** Upon reviewing the record, we find that defense counsel's conduct during plea bargaining did not fall below an objective standard of reasonableness. "A reviewing court 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *State v. Clark*, 2d Dist. Champaign No. 2011 CA 32, 2013-Ohio-300, ¶ 38, quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Defense counsel did not fail to meet any deadlines, and he complied with the general duty to communicate the State's plea offers. It was also not unreasonable for counsel to have lacked a sense of urgency to revisit King, since the offer had no expiration date and counsel had no reason to believe it would be revoked. Counsel could not have anticipated that the State would decide to revoke the offer because, after learning more about the case, it believed that King's actions justified a more severe punishment (especially, in this case, by the supervisor of the assistant prosecutor who had made the offer). Indeed, the State argued and defense counsel agreed (albeit for different reasons) that prosecutors often offered more favorable plea bargains closer to the trial date.

**{¶ 26}** The State's first plea offer was made on February 6, 2012, but the offer only

addressed the first five counts for which King had been indicted. At that point in time, King had not been indicted on the possession of heroin offense because the State was awaiting the results of laboratory tests on the substance. It was not until three weeks later that King was indicted for possession of heroin. We find it was not unreasonable for defense counsel to have waited for the possession of heroin charge to unfold before reconvening with King, especially since the State's first offer did not address the heroin offense. King was arraigned for the heroin offense on February 24, 2012; therefore only one week passed between King's arraignment and the State's revocation of the offer. Based on the time frame of all these proceedings, we find that defense counsel's failure to revisit King before the March 5, 2012 revocation was not unreasonable.

{¶ 27} Given that we must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and given that there are various facts in the record which establish that defense counsel's conduct was not unreasonable, we find that defense counsel's delay in revisiting King did not fall below an objective standard of reasonableness. Accordingly, King has not demonstrated that his defense counsel rendered ineffective assistance during the plea bargaining process.

{¶ 28} King's first assignment of error is overruled.

### III. Allied Offenses of Similar Import

{¶ 29} In his supplemental brief, King argues that his two convictions for having weapons while under disability are allied offenses that should have been merged pursuant to R.C. 2941.25. King claims that he committed the offenses in the course of the same incident and that he had a single animus for each offense.

{¶ 30} R.C. 2941.25, concerning allied offenses of similar import, provides:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 31}    In *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, the Ohio Supreme Court announced a new test for determining when offenses are allied offenses of similar import.    Pursuant to *Johnson*, "[w]hen determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." *Id*. at ¶ 44. The Court further noted that:

In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense *and* commit the other with the same conduct, not whether it is possible to commit one *without* committing the other. * * * If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import.

If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., "a single act, committed with a single state of mind. "* * *

If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged.

Conversely, if the court determines that the commission of one offense will *never* result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R .C. 2941.25(B), the offenses will not merge.

(Citations and quotations omitted.) *Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6341, 942 N.E.2d 1061, at ¶ 48-51.

{¶ 32} R.C. 2923.13 prohibits individuals under certain legal disabilities from acquiring, having, carrying or using any firearm or dangerous ordnance. Several appellate districts have commented that the legislature's use of the word "any" created an ambiguity as to whether each individual weapon was the "unit of prosecution," rather than the "transaction of having the weapons." *E.g*., *State v. Pitts*, 4th Dist. Scioto No. 99 CA 2675, 2000 WL 1678020, *13 (Nov. 6, 2000); *see also State v. English*, 1st Dist. Hamilton No. C-080872, 2010-Ohio-1759, ¶ 43. These courts have held that "the simultaneous, undifferentiated possession of weapons by a person under a disability constitutes *only one offense* and not separate offenses for each weapon." (Emphasis in original.) *Pitts* at *13; *see also*, *e.g*., *State v. Creech*, 188 Ohio App.3d 513, 2010-Ohio-2553, 936 N.E.2d 79, ¶ 24 (4th Dist.); *English* at ¶ 43; *State v. Long*, 9th Dist. Summit No. 26441, 2013-Ohio-251.

{¶ 33} For example, in *Long*, the defendant was arrested for a shooting, and the police found two guns in a tote bag during a search of the defendant's home. *Id.* at ¶ 2. The defendant indicated that he acquired the two guns simultaneously from a friend for purposes of protection. *Id*. at ¶ 10. After a jury trial, the defendant was found guilty of various charges, including two

counts of having weapons while under disability. *Id.* at ¶ 3. The defendant appealed the convictions for having weapons under disability on the ground that they were allied offenses of similar import. *Id.* at ¶ 5. The court in *Long* found that the first part of the *Johnson* analysis was satisfied because "it was possible for [the defendant] to commit both crimes, i.e. possession of two handguns, with the same conduct; simultaneously taking possession of the two guns while under disability." *Id.* at ¶11.

**{¶ 34}** We agree with *Long* and other cases that have applied the same reasoning, and we likewise find that a defendant can commit one offense of having weapons while under disability by the possession of multiple weapons.

**{¶ 35}** We therefore turn to whether King's two offenses of having weapons while under disability were committed separately or with a separate animus. Although the simultaneous, undifferentiated possession of multiple weapons can constitute one act of having weapons while under disability, Ohio appellate districts have further held, however, that multiple convictions are appropriate if "'there is evidence that the weapons were stored in different places or acquired at different times.'" *State v. Lowery*, 11th Dist. Trumbull No. 2007-T-0085, 2008-Ohio-1896, ¶ 15, quoting *United States v. Dunford*, 148 F.3d 385, 390 (4th Cir.1998). *Accord Creech* at ¶ 24; *Pitts* at *13.

**{¶ 36}** Multiple convictions are also appropriate where the offenses are committed with a separate animus. This district discussed the definition of "animus" in *State v. Beverly*, 2d Dist. Clark No. 2011 CA 64, 2013-Ohio-1365, stating:

> The Supreme Court of Ohio has interpreted the term "animus" to mean "purpose or, more properly, immediate motive." "Like all mental states, animus is often difficult to prove directly, but must be inferred from the surrounding

circumstances. * * * Where an individual's immediate motive involves the commission of one offense, but in the course of committing that crime he must, A priori, [sic] commit another, then he may well possess but a single animus, and in that event may be convicted of only one crime." "If the defendant acted with the same purpose, intent, or motive in both instances, the animus is identical for both offenses."

(Citations omitted.) *Id*. at ¶ 42.

{¶ 37} In this case, King was apprehended after he crashed his vehicle into a telephone pole and attempted to flee from the scene. After his apprehension, the police located a gun in his vehicle. King was taken to a hospital and to the police department before he was moved to the jail, where he produced a second gun from his jacket.

{¶ 38} Whether King initially acquired the guns at different times is not resolved in the record. However, from the facts in the record, it is apparent that King had both guns in his possession while he fled from officers in his vehicle. Thus, while he was fleeing in his car, King had simultaneous, undifferentiated possession of both weapons.

{¶ 39} Upon King's apprehension, the police found one of the weapons in King's vehicle. The police did not discover the second weapon until he was being booked into the jail. However, King's continued possession of the second weapon was not a separate act with a separate animus. Rather, it was continuation of his possession of both weapons while under disability. King's continued possession of the second weapon beyond his initial apprehension was due solely to the police officer's failure to discover the second weapon during the initial pat down at the site of his arrest and the subsequent pat down at the police department.

{¶ 40} This is not to say that temporal and spacial differences in the commission of similar offenses are not important to our allied offense analysis. Indeed, our determination of whether offenses are allied offenses of similar import often hinges on the timing and location of the offenses. *E.g.*, *State v. Ranier*, 2d Dist. Montgomery No. 25091, 2013-Ohio-963, ¶ 10 (concluding that the temporal separation between the knife blows, albeit slight, established separate acts of felonious assault); *State v. Wright*, 2d Dist. Montgomery No. 24276, 2011-Ohio-4874, ¶ 79 (theft was not an allied offense of similar import where there was "a distinct, temporal break between the commission of the aggravated burglary and aggravated robbery offenses and the commission of the theft offense"); *State v. Beverly*, 2d Dist. Clark No. 2011 CA 64, 2013-Ohio-1365, ¶ 43 (citing additional cases). But in this case, King "had" and "carried" two weapons simultaneously prior to his apprehension, and he had the second gun for a longer period of time after his arrest simply because the police did not discover the weapons simultaneously.

{¶ 41} Upon review of the record, we conclude that King committed a single act with a single state of mind when he possessed the two guns. Accordingly, the trial court erred in failing to merge King's two counts of having weapons while under disability as allied offenses of similar import.

{¶ 42} King's supplemental assignment of error is sustained.

### IV. Excessive Sentence

{¶ 43} In his second assignment of error, King claims that the trial court "erred and abused its discretion in sentencing Mr. King to an excessive sentence." Specifically, King argues no one was injured during the commission of his offenses and that all offenses arose out

of the same action.   He also emphasizes that he accepts full responsibility and has remorse for his actions.

**{¶ 44}**   We review a felony sentence using a two-step procedure.  *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, ¶ 4.   "The first step is to 'examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law.'"   *State v. Stevens*, 179 Ohio App.3d 97, 2008-Ohio-5775, 900 N.E.2d 1037, ¶ 4 (2d Dist.), quoting *Kalish* at ¶ 4. "If this step is satisfied, the second step requires that the trial court's decision be 'reviewed under an abuse-of-discretion standard.'"   *Id.*

**{¶ 45}**   The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences.  *See State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, at paragraph seven of the syllabus.   However, the trial court must comply with all applicable rules and statutes, including R.C. 2929.11 and R.C. 2929.12. *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 37.

**{¶ 46}**   With 2011 Am.Sub. H.B. 86, effective September 30, 2011, Ohio's sentencing scheme requires judicial fact-finding for consecutive sentences.   Of relevance, R.C. 2929.14(C)(4) provides:

> (4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and

to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 47}   As stated above, King pled guilty to failure to comply with the order or signal of a police officer, two counts of having weapons while under disability, and possession of oxycodone, all third-degree felonies, and to possession of heroin, a fifth-degree felony.   The trial court was authorized to impose a sentence of 9, 12, 18, 24, 30, 36 months for the third-degree felonies and between 6 and 12 months for possession of heroin.   The trial court's sentences of three years in prison for each count of having weapons while under disability, and possession of oxycodone and of one year for failure to comply and possession of heroin were within the statutory sentencing ranges.

{¶ 48}   In imposing consecutive sentences in Case No. 12CR66, the trial court found that

consecutive sentences were "necessary to protect the public and to punish the offender, and they're not disproportionate to the crimes committed and the consequences of those crimes." The court further found that King was on post-release control when the offenses were committed and that King's criminal history "shows that consecutive terms are needed to protect the public." The record indicates that King had already been to prison three times for four different cases involving possession of drugs (twice), burglary, and fleeing and eluding. (Two of the four sentences had been served concurrently.) King had also been committed to the Department of Youth Services as a juvenile for receiving stolen property and burglary. Based on the record, the trial court's imposition of consecutive sentences was not contrary to law.

{¶ 49} It is well established that there may be only one conviction for allied offenses of similar import, and thus, allied offenses must be merged at sentencing. *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923; R.C. 2941.25(A). We have concluded, above, that King's sentence was contrary to law to the extent that the trial court failed to merge allied offenses of similar import. However, we will not discuss that issue again in this assignment of error.

{¶ 50} King further claims that the trial court abused its discretion when it imposed an excessive sentence. "A trial court has broad discretion in sentencing a defendant and a reviewing court will not interfere with the sentence unless the trial court abused its discretion." (Citations omitted.) *State v. Bray*, 2d Dist. Clark No. 2010CA14, 2011-Ohio-4660, ¶ 28. In the context of felony sentencing, an abuse of discretion may be found if the sentencing court unreasonably or arbitrarily weighs the statutory factors. *State v. Bailey*, 2d Dist. Clark No. 2011CA40, 2012-Ohio-1569, ¶ 15, citing *State v. Saunders*, 2d Dist. Greene No. 2009 CA 82, 2011-Ohio-391, ¶ 15.

{¶ 51}  The trial court reviewed the presentence investigation report.  Although King was 24 years old, he already had an extensive criminal history, including three separately-served terms of incarceration in prison, and he was on post-release control at the time he committed the instant offenses.  King did accept responsibility for his actions and expressed remorse, but we cannot say that the trial court acted unreasonably when it found that the sentence it imposed was necessary to protect the public and adequately punish him.  Based on the record, the trial court did not abuse its discretion when it selected the length of the sentences and ordered the sentences in Case No. 12CA66 to run consecutively to each other.

{¶ 52}  The second assignment of error is overruled.

## V.  Conclusion

{¶ 53}  The trial court's judgment will be affirmed in part, reversed in part, and remanded for the merger of allied offenses of similar import.

. . . . . . . . . . . . .

FAIN, P.J., concurs.

WELBAUM, J., concurring in part and dissenting in part:

{¶ 54}  I very respectfully dissent regarding the majority's opinion that the two convictions for having weapons under disability are allied offenses that should have been merged pursuant to R.C. 2941.25.  The record shows that King did not commit the offenses with a single act or single animus when he possessed the two guns.  The record also shows that the guns were stored in different locations.

{¶ 55}  The case at bar is distinguishable from *State v. Long,* 9th Dist. Summit No. 26441, 2013-Ohio-251.  In this case, King simultaneously possessed the guns on December 25,

2011, but, unlike *Long*, the record does not indicate that King acquired them simultaneously or that he stored them in same location.   Generally, "'the simultaneous, undifferentiated possession of weapons by a person under a disability constitutes only one offense.'"   (Citations omitted.) *State v. Creech*, 188 Ohio App.3d 513, 2010-Ohio-2553, 936 N.E.2d 79, ¶ 24 (4th Dist.), quoting *State v. Pitts*, 4th Dist. Scioto No. 99 CA 2675, 2000 WL 1678020, *13 (Nov. 6, 2000). However, this is not the case if "'there is evidence that the weapons were stored in different places or acquired at different times.'" *State v. Lowery*, 11th Dist. Trumbull No. 2007-T-0085, 2008-Ohio-1896, ¶ 15, quoting *United States v. Dunford*, 148 F.3d 385, 390 (4th Cir.1998); *Accord Pitts* at *13.   Because King's guns were stored in different places, and because there is nothing in the record indicating that the guns were acquired at the same time, the first part of the *Johnson* analysis is not satisfied.

{¶ 56}   Even assuming that the first part of the *Johnson* analysis was satisfied, King's convictions would still not be considered allied offenses because he cannot satisfy the second part of the analysis.   The second part of the analysis is to determine whether the offenses were committed separately or with a separate animus.   "The Supreme Court of Ohio has interpreted the term 'animus' to mean 'purpose or, more properly, immediate motive.'"   *State v. Beverly*, 2d Dist. Clark No. 2011 CA 64, 2013-Ohio-1365, ¶ 42, citing *State v. Logan*, 60 Ohio St.2d 126, 131, 397 N.E.2d 1345 (1979).

"Like all mental states, animus is often difficult to prove directly, but must be inferred from the surrounding circumstances. * * * Where an individual's immediate motive involves the commission of one offense, but in the course of committing that crime he must, A priori, commit another, then he may well possess but a single animus, and in that event may be convicted of only one

crime." *Logan* at 131, 397 N.E.2d 1345. "If the defendant acted with the same purpose, intent, or motive in both instances, the animus is identical for both offenses." (Citation omitted.) *Id.*

{¶ 57} In *Long*, 9th Dist. Summit No. 26441, 2013-Ohio-251, the court found that the second part of the *Johnson* analysis was satisfied because the defendant's two weapons under disability offenses were committed by a single act with a single state of mind, self-protection. *Id.* at ¶ 13.

{¶ 58} Unlike *Long*, King committed his two weapons under disability offenses via separate acts with a separate state of mind for each. After King's arrest, and after the first gun was already discovered, King purposely kept the second gun concealed from police and continued to carry it in his jacket. He carried it while riding in the police cruiser, while receiving treatment at the hospital, and while checking in at jail. This conduct is completely separate from the conduct related to his possession of the first gun. Additionally, King's separate conduct had a separate animus because he was not acting with the same purpose, intent, or motive with respect to each gun. One can infer from the surrounding circumstances, that once King was arrested, his state of mind with respect to the second gun had changed. He was no longer carrying it for its original purpose, but in response to his arrest. Because King committed the two weapons under disability offenses via separate conduct and with a separate animus for each offense, the second part of the *Johnson* analysis is not satisfied.

{¶ 59} Because both parts of the *Johnson* analysis are not satisfied, it is my opinion that King's two convictions for having a weapon while under disability are not allied offenses, and they should not be merged under R.C. 2941.25. I would affirm the trial court's sentence on the two convictions for having weapons under disability. Accordingly, I very respectfully dissent on

this issue.   I otherwise concur with the majority.

. . . . . . . . . . .

Copies mailed to:

Lisa M. Fannin
Jennifer S. Getty
Hon. Douglas M. Rastatter