[Cite as *State v. Mallow*, 2026-Ohio-2204.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 2025-CA-26 |
| Appellee | : | |
| | : | Trial Court Case Nos. 2023 CR 149; |
| v. | : | 2025 CR 104 |
| | : | |
| ZAKYE RYAN MALLOW | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | **FINAL JUDGMENT ENTRY & OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on June 12, 2026, the judgments of the trial court are affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

*Christopher B. Epley*

_____
CHRISTOPHER B. EPLEY, JUDGE

TUCKER, J., and HUFFMAN, J., concur.

OPINION

ROBERT ALAN BRENNER, Attorney for Appellant
JANE A. NAPIER, Attorney for Appellee

EPLEY, J.

{¶ 1} Zakye Ryan Mallow appeals from judgments of the Champaign County Court of Common Pleas that (1) revoked his community control in Champaign C.P. No. 2023 CR 149 and sentenced him to 36 months in prison and (2) imposed a one-year sentence and $500 fine for trafficking in marijuana in Champaign C.P. No. 2025 CR 104. For the following reasons, the trial court's judgments are affirmed.

### I. Facts and Procedural History

{¶ 2} In July 2023, 19-year-old Mallow planned the assault of C.S. with Daniel Clark. Mallow lured C.S. to a wooded bike path where Clark then attacked C.S. with a railroad spike and a rock. C.S. was hit repeatedly in the head, and one of his eyes was swollen shut. Mallow pulled Clark from C.S. and stopped the assault from progressing further; Mallow was injured in the process. In addition, Mallow helped C.S. seek emergency medical intervention after the assault. Mallow then repeatedly lied about his involvement to law enforcement and attempted to "cover up" for Clark. *See, e.g.*, Tr. 32, 40.

{¶ 3} In August 2023, Mallow was indicted in Case No. 2023 CR 149 on two counts of felonious assault, both felonies of the second degree, and one count of obstructing justice, a felony of the third degree. Two months later, Mallow pled guilty to obstructing justice, and the two felonious assault counts were dismissed.

{¶ 4} On November 1, 2023, after a presentence investigation, the trial court sentenced Mallow to four years of community control. It noted as mitigating circumstances

2

Mallow's actions to halt the attack on C.S. and to assist him in obtaining medical care, Mallow's childhood in a group home environment, his genuine remorse, and his motivation to seek treatment for his substance abuse. The victim and the State supported the non-imposition of a prison term. The conditions of community control included, among other things, that Mallow complete the West Central Community Based Correctional Facility program, obtain a GED, and not consume alcohol or non-prescribed drugs, including marijuana. Mallow did not appeal from his conviction.

{¶ 5} Approximately two weeks later, Mallow was unsuccessfully discharged from West Central due to his "significant mental health issues." Mallow's probation officer requested a community control violation hearing, and Mallow admitted to the violation. The trial court continued Mallow on community control, removing the condition that he complete the West Central program and adding conditions regarding mental health treatment.

{¶ 6} Almost two years later, on September 24, 2025, Mallow's probation officer filed a notice that Mallow had violated two conditions of his community control by (1) possessing and using marijuana and permitting drug abuse and (2) twice traveling out of state without permission.

{¶ 7} At a hearing on October 3, 2025, the State indicated that the parties had reached an agreement regarding the alleged violations, as well as a new charge. Mallow would admit to the community control violations in Case No. 2023 CR 149 and would plead guilty to a bill of information charging one count of trafficking in marijuana, a fifth-degree felony, in Case No. 2025 CR 104. The State would recommend at sentencing that Mallow's community control be revoked in Case No. 2023 CR 149 and that the court impose a sentence to be served concurrently with Case No. 2025 CR 104. Mallow agreed to forfeit

certain items to the Urbana Police Department and to pay court costs and court-appointed counsel fees. The parties waived a presentence investigation report ("PSI") for the new case.

{¶ 8} After defense counsel concurred with the prosecutor's recitation of the agreement, the trial court engaged in a plea colloquy with Mallow, addressing both cases. The court accepted Mallow's admission to the community control violations and his guilty plea in Case No. 2025 CR 104. Before proceeding to sentencing, the trial court allowed counsel to review the PSI that had been prepared prior to Mallow's 2023 sentencing. The court indicated that it also would consider the community control violation report prepared by the Adult Parole Authority as well as letters sent to the court by Mallow on November 29, 2023, and October 1, 2025.

{¶ 9} The court then heard from the prosecutor, defense counsel, and Mallow. The State argued that Mallow had not been "fully engaged in community control sanctions well before committing the new offenses." It highlighted Mallow's sleeping during Thinking for a Change, inconsistent attendance at certain programming, failure to maintain employment, and consistent use of THC. The prosecutor noted that Mallow had been warned for disorderly conduct in July 2024 and committed disorderly conduct in February 2025, where he admitted to carrying a baton and brandishing it during a verbal altercation. The State described how Mallow had committed trafficking in marijuana—traveling to obtain marijuana and making references to obtaining a gun to use in future trafficking endeavors. Mallow had made calls from jail that spoke of his plans to "hunt for heads" of his co-defendants in the trafficking incident. He also had issues with corrections officers. The State argued that Mallow displayed "high criminal attitudes with strong ties to violence, lack of empathy, and retaliation antics" and maintained poor peer associations. The prosecutor asked the court to revoke his community control and impose 36 months in prison.

4

{¶ 10} Defense counsel also described Mallow's trafficking offense, stating that Mallow had obtained marijuana for himself and two friends for their own purposes. Counsel noted that Mallow was articulate and was a "candidate worth giving a shot." He indicated that Mallow had not been ready for West Central previously but could likely benefit from the program now. Counsel asked the court to consider sending Mallow to West Central before imposing prison.

{¶ 11} Speaking on his own behalf, Mallow emphasized the progress he had made in many aspects of his life, and he asked the court not to "throw it all away." He stated that his "only wish [was] to try and put this all behind me and continue to make positive changes and surrounding [sic] myself with family with the precious time that I have left."

{¶ 12} The trial court explained its thought processes to Mallow, beginning with its reasons for originally imposing community control and returning him to community control after his first violation. The court also discussed its prohibition on Mallow's use of marijuana and possessing a firearm. It noted that Mallow had "made some outlandish statements with regard to wanting to use a firearm. Both in South Carolina with regard to a particular race of people. As well as to the corrections officers at our jail." During the court's exchange with Mallow, Mallow conceded that his probation officer had warned him multiple times about positive tests for THC, his peer associations, and the importance of obtaining employment. Mallow was also growing marijuana. While noting Mallow's intelligence and "a certain introspective gift," the trial court found that he had "this anger and aggressive nature . . . that is alarming." The court emphasized Mallow's lack of remorse regarding the new charge, his retaliatory communications regarding his co-defendants, and his statements about wanting to put bullets into corrections officers.

{¶ 13} The trial court revoked Mallow's community control and imposed 36 months in prison, to be served concurrently with the one-year sentence in Case No. 2025 CR 104. In doing so, the court told Mallow that it had considered and applied the purposes and principles of sentencing and the relevant factors set forth in R.C. 2929.11 and 2929.12.

{¶ 14} Mallow appeals from the revocation of his community control, raising one assignment of error. Although Mallow's notice of appeal also includes Case No. 2025 CR 104, he has not raised any assignments of error related to that case. Accordingly, the judgment in Case No. 2025 CR 104 is summarily affirmed.

## II. Imposition of 36-Month Sentence

{¶ 15} In his assignment of error, Mallow claims that the trial court erred by sentencing him to 36 months in prison in violation of R.C. 2929.11. He emphasizes that he had made significant progress while on community control, including his "mental, physical, and emotional health," his education, his "responses to situations," and his "honesty and cooperation with authority." He further points to his remorse and family support. Mallow asserts that the court should have imposed a more lenient sentence.

{¶ 16} R.C. 2929.15(B) governs the penalties available to the sentencing court when an offender violates community control. In felony cases, if the conditions of a community control sanction are violated or if the offender violates a law or leaves the state without permission, the trial court may (1) lengthen the term of the community control sanction; (2) impose a more restrictive community control sanction; or (3) impose a prison term on the offender, subject to certain limitations. R.C. 2929.15(B)(1)(a) through (c).

{¶ 17} "[A] revocation of community control punishes the failure to comply with the terms and conditions of community control, not the specific conduct that led to the revocation." *State v. Black*, 2011-Ohio-1273, ¶ 17 (2d Dist.). "For all revocations, the prison

6

term must be within the range of prison terms available for the offense for which community control had been imposed and the term may not exceed the prison term specified in the notice provided to the offender at the original sentencing hearing." *State v. Monroe*, 2020-Ohio-597, ¶ 41 (2d Dist.), citing R.C. 2929.15(B)(3); *see also State v. Howard*, 2020-Ohio-3195, ¶ 22 (trial court is not required to renotify defendant of the potential prison term for a violation of community control).

{¶ 18} We review sentences imposed upon revocation of an offender's community control under the standard of review set forth in R.C. 2953.08(G)(2). *E.g.*, *State v. Von Ward*, 2016-Ohio-5733 (2d Dist.) (applying *State v. Marcum*, 2016-Ohio-1002). Under that statute, an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it "clearly and convincingly" finds either (1) that the record does not support certain specified findings or (2) that the sentence imposed is contrary to law. *State v. King*, 2024-Ohio-5347, ¶ 11 (2d Dist.).

{¶ 19} "The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences." *State v. King*, 2013-Ohio-2021, ¶ 45 (2d Dist.). "It is enough that the record demonstrates that the trial court considered R.C. 2929.11 and R.C. 2929.12 prior to imposing its sentence." *State v. Trent*, 2021-Ohio-3698, ¶ 15 (2d Dist.). "A sentence is contrary to law when it does not fall within the statutory range for the offense or if the trial court fails to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12." *State v. Brown*, 2017-Ohio-8416, ¶ 74 (2d Dist.).

{¶ 20} R.C. 2929.11 requires trial courts to be guided by the overriding purposes of felony sentencing. Those purposes are threefold: "to protect the public from future crime by

7

the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). "[A] sentencing court may place such weight on each of the purposes as the circumstances of the case require." *State v. Bittner*, 2019-Ohio-3834, ¶ 18 (12th Dist.).

{¶ 21} R.C. 2929.12(B) sets forth ten factors indicating that an offender's conduct is more serious than conduct normally constituting the offense; R.C. 2929.12(C) sets forth four factors indicating that an offender's conduct is less serious than conduct normally constituting the offense. R.C. 2929.12(D) and (E) each list five factors that trial courts are to consider regarding the offender's likelihood of committing future crimes. For each of these categories, the trial court may also consider "any other relevant factors." Finally, R.C. 2929.12(F) requires the sentencing court to consider the offender's military service record, if any, and whether the offender has a condition traceable to that service that contributed to the commission of the offense.

{¶ 22} The Ohio Supreme Court has stated that R.C. 2953.08(G)(2)(b) "does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12." *State v. Jones*, 2020-Ohio-6729, ¶ 39. Accordingly, "[w]hen reviewing felony sentences that are imposed solely after considering the factors in R.C. 2929.11 and R.C. 2929.12, we do not analyze whether those sentences are unsupported by the record." *State v. McDaniel*, 2021-Ohio-1519, ¶ 11 (2d Dist.).

{¶ 23} *Jones* does not preclude claims that a sentence was imposed based on impermissible considerations, namely considerations that fall outside of R.C. 2929.11 and 2929.12. *State v. Bryant*, 2022-Ohio-1878. That exception is inapplicable here.

8

**{¶ 24}** In this case, we cannot conclude that the court's 36-month prison sentence is clearly and convincingly unsupported by the record or contrary to law. Mallow does not dispute that his 36-month sentence was within the statutory range, nor does he claim that the trial court failed to inform him at his original sentencing that a 36-month prison sentence could be imposed if he violated his community control. The trial court complied with its obligations under R.C. 2929.11 and 2929.12 when imposing the 36-month sentence. We may not independently "weigh the evidence in the record and substitute [our] judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *Jones* at ¶ 42.

**{¶ 25}** Mallow's assignment of error is overruled.

### III. Conclusion

**{¶ 26}** The trial court's judgments are affirmed.

. . . . . . . . . . . . .

TUCKER, J., and HUFFMAN, J., concur.