[Cite as *State v. Blakley*, 2020-Ohio-1141.]

# IN THE COURT OF APPEALS OF OHIO
# SECOND APPELLATE DISTRICT
# MIAMI COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2019-CA-13 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-537 |
| | : | |
| JOSEPH L. BLAKLEY | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 27th day of March, 2020.

. . . . . . . . . . .

JANNA L. PARKER, Atty. Reg. No. 0075261, Assistant Prosecuting Attorney, Miami County Prosecutor's Office, Appellate Division, Safety Building, 201 West Main Street, Troy, Ohio 45373
     Attorney for Plaintiff-Appellee

JOHN A. FISCHER, Atty. Reg. No. 0068346, 70 Birch Alley, Suite 240, Dayton, Ohio 45440
     Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Joseph L. Blakley appeals from the trial court's judgment finding him guilty, following a plea of no contest, of one count of aggravated vehicular assault, in violation of R.C. 2903.08(A)(1)(a)/(B)(1)(a), a felony of the second degree (Count 1); one count of operating a vehicle while under the influence ("OVI"), in violation of R.C. 4511.19(A)(1)(b)/(G)(1)(b), a misdemeanor of the first degree (Count 2); and one count of driving under suspension, in violation of R.C. 4510.11(A), also a misdemeanor of the first degree (Count 3). The offenses related to a car accident in which Blakley's girlfriend, Brooke, was gravely injured; two children and Blakley were also in the vehicle at the time of the accident. The court imposed a mandatory sentence of seven years on the felony offense and a term of six months for each misdemeanor offense, all to be served concurrently. On Count 1, the court also suspended Blakley's driver's license for ten years and assessed six points on his driver's license. On Count 2, the court imposed a mandatory fine of $525, ordered Blakley to undergo mandatory alcohol/drug treatment, and assessed six points on his driver's license. On Count 3, the court assessed two points on Blakley's driver's license. The trial court also entered judgment against Blakley in favor of Miami County, Ohio, in the amount of $1,132.50 for costs, pursuant to R.C. 2947.23.

{¶ 2} The State concedes that the trial court erred in finding Blakley guilty on Counts 2 and 3 without an explanation of the circumstances surrounding the offense prior to accepting his plea, as required by R.C. 2937.07. The judgment of the trial court on those two counts is reversed, and the matter is remanded for further proceedings on those offenses. The judgment of the trial court is affirmed with respect to Count 1.

{¶ 3} Blakley was indicted on September 26, 2018. Blakley entered his pleas of

no contest on June 11, 2019. At the plea hearing, after ascertaining that Blakley had reviewed the indictment with defense counsel, the court read the indictment into the record. The court advised Blakley of his constitutional rights and ascertained his understanding that a plea of no contest meant that he did not admit guilt, but he admitted the truth of the facts in the indictment. The court stated, "After reviewing the Indictment in court here today, there is a sufficient factual basis for your plea."

{¶ 4} The following exchange occurred at Blakley's subsequent sentencing hearing:

JUDGE: What would you like to say on your client's behalf?

[DEFENSE COUNSEL]: Your Honor, we provided the court with a letter from the Defendant's mother. Beyond that, the facts kind of speak for themselves. Obviously, we know this was a situation where Joe [Blakley] obviously got in a tragic accident. He was with his girlfriend. There's not much I can say at this point that would make any difference, but I think it's important that Joe say something to the court.

JUDGE: Thank you; Mr. Blakley, what would you like to say?

MR. BLAKLEY: To ask God for your forgiveness. I would do anything to take it back. I would do life in prison to change places with her right now. I would do anything in this world to take it back. I promise you I did not want to take her away from her kids. I love her and I miss her. I think about her every day, and I'm so sorry, and I would do any - - I swear I would do anything. I would take my life, and I would trade places with her right now. I miss her so much.

{¶ 5} The victim's sister, Nicole Wax, read the following statement:

* * *  I just wanted everybody to be aware of the condition that she's in.  * * *  It's like a never ending nightmare since the day of the wreck. Life is not the same anymore for us.  There is no joy in our lives.  My nephew and my son were also in the wreck.  Brooke basically lost her life that day.  They took half of her skull out to relieve the pressure.  During the surgery she had several strokes.  They shaved all her hair off.  Now she lays in a bed at a nursing home every day.  She can't do anything for herself at all.  When she opens her eyes, she stares at the ceiling lifeless looking.  She don't respond to light in her eyes, so they say that she can't see.  Her arms and her legs are curled up and locked from laying there for so long not moving.  She has a hole in her throat to breathe with a trach. That's the only way she can breathe.  The nurse's aides and my family and I have to brush her teeth, wash her; change her diapers.  She has to be turned every two hours so she don't get bed sores.  The only thing she can do is cry out, mumble and cough.  It's the most painful cry I've ever heard. Her two children have no mother anymore.  Her son also lost his father. He has a lot of issues now.  He thinks everyone is going to die or get hurt and leave him.  He just turned five and his name is [C.].  Him and my son, [D.], wait, I already said that.  I was at work and had no clue that any of them were even going.   I guess they were going swimming somewhere that day, and they were both drinking, Joey and Brooke, I believe.  [D.] has a lot of trauma because of this, too.  He is currently in The Brooke Hospital –

KMI – in Louisville, Kentucky. He has nightmares and flashbacks a lot. [D.] and [C.] had glass chips in them when it happened. They were lucky they weren't hurt worse than what they were. I'm furious that Joey decided to take off with all of them while he was drinking, and I just want to add that I know it was Brooke's fault, too, just as much, and not telling me everything. I could have lost all of them that day. Everyone in my family is affected by this. My little sister, [P.], is now a mother that she didn't plan on being. She has [C.], but no kids of her own. My mom has lost her mind over this; she's a nervous wreck every day. My poor grandparents are beside themselves. This family will never be the same, and for Joey, I know if he could live that day over, he would, I do know that, but any person in the whole world has consequences to their actions and have to pay for what they did. We're praying for Brooke every day, and we will pray for Joey to get through this. Unfortunately, for Brooke, this will most likely be a life sentence, and, I just, I'm sorry that the whole thing happened. It's just as much Brooke's fault as it is his, and I just wanted to say that.

{¶ 6} The victim's mother, Flo Wax, made the following statement:

* * * I really don't know what to say other than I know Joey wouldn't have wanted this, and neither did any of us, like my daughter said, and I know he would have never wanted this to happen. I want to say that I'm trying to forgive you, Joey, and I'm just trying to learn to deal with it, and I don't even know what the right thing to do here is today, but I'll pray for you and just keep praying for Brooke.

{¶ 7} After hearing from the prosecutor and defense counsel, the court stated:

JUDGE: * * * The court has put a lot of time into this case looking at the pre-sentence investigation; listening to all the parties; had previously received Nicole Wax's statement, as well as your mother has emailed the court and made a statement through that email. The court must consider the principles and purposes of sentencing in the sentencing statute, and that is to protect the public from future crime; to punish you for the offense committed; and to promote effective rehabilitation. Really, this case does not hit more on target all three points of that. When I look at your history in the pre-sentence investigation report, there's a clear issue of protecting the public. There's a clear issue of you probably and likely recommitting based upon your history, and then, obviously in this case we've already heard of the damage and the injury suffered by the victim in this case. The court has to look at the seriousness factors under the Ohio Revised Code, and that does indicate the significant physical harm to the victim, as well as it is your relationship that facilitated the offense, and the other factor is that you are on active community control and were on so at the time the offense was committed. You're 34 years old, and while I have no doubt you would take everything back from that day; you would never want this kind of harm on any person, not to mention the person that you love and care for deeply. That's very obvious to this court, but the problem is everything does lead up to it. Your history; the facts about the actual incident; you both were drinking; you put children in the car; you had no control what was going on

that day; you were on community control; you did have [a] prior conviction for OVI; you did have a prior driving under suspension; you weren't valid that day; nothing about that day was going in the right direction legally. Your record starts, looks like in 2004 you had criminal damaging; in 2005 you had an underage that was amended, so it goes back a very long time with the alcohol; in 2007 you had an assault; in 2009 you had an abduction where you received community control; 2016 you had an OVI conviction; in 2016 you also had an OVI suspension conviction; in 2018 a failure to notify, felony, but what's more significant about that is you were on community control, you absconded and now there's a pending probation violation with that active community control. Your record indicates that not only do you have the prior felonies; that you have prior felony consequences; you get put on community control and then you violate. That establishes you're not being rehabilitated; you're not doing what you're supposed to be doing. It's clear that you need treatment of some sort for alcohol, and you have not done that. You're put on community control to abstain from alcohol, and you're still drinking, and then you put people in the car and this is the consequence. Being a felony of the second degree, the penalty is mandatory. The court finds you are a risk to society based upon all of the above. The court also finds and looks for what else are you doing in your life. Are you working; are you going to school; are you making progress in some other way I just don't normally see because it's not the legal part of it, and in this case, I don't even see that. It looks like you have a 17 year old

son where you're in arrears of over $29,000.00 in child support. You have a nine year old daughter, and it doesn't look like you're paying support for her either. It looks [like] at some point you did complete some treatment at Recovery Works, but your pre-sentence investigation report states you began drinking at the age of seven and at some point in your life you would drink 30 beers in two days. You really want to believe that you've changed; that this won't happen again, and you say in your pre-sentence investigation report that it was a wake up; that you weren't going to drink again after that accident, but yet the pre-sentence investigation report says the last day you drank was January 1st of this year and that accident was June 28th of 2018. I can't imagine anything worse happening as a result of alcohol, and yet it looks like from the court's report that you continued to drink after that. The court is not aware of any mitigating factors under the Revised Code in this case given the history that I've just gone over, as well as the community control violation and the significant injury to the victim. The court does find, however, and the family admirably admits today, that there is blame on the victim as well, and no one can take this day back and re-predict what's going to happen, but what I do see in the facts is that you and two other, two children, were in that car wearing seatbelts, and all of you seem to be okay other than probably some psychological damage. Brooke was not wearing her seatbelt. We have no idea what injury would have resulted had she been wearing her seatbelt. The other factor, though, the victim also knew you had been drinking, but it doesn't take away from you driving and

drinking. Everyone got in the car; two innocent children were in there who would have no idea what's going on knowing not to get in a car like that; and when the investigating officer was at the scene, his statement was that there were beer bottles laying all around the scene, and your blood taken at the hospital showed a blood alcohol content of .142. There's no doubt that that victim will never be whole in this case, and we've already heard the impact on her family with two young children and someone else having to take care of them as the victim can no longer do that and will never be able to do that. You've heard the descriptive detail of her condition, and I'm sure you were already familiar with that. She has no ability to take care of her own bodily functions not [sic] alone anyone else's. The victims in the car include her son, who's now suffering psychological consequences as well. After everything that I've gone over, as well as the mandatory sentence: what the court finds of your inability to make changes at this point; you have not been rehabilitated, and you are likely to recommit, as well as there is a huge risk to the public. * * *

{¶ 8} For these reasons, the court imposed an aggregate sentence of seven years in prison, plus financial sanctions, a driving suspension, and points, as described above.

{¶ 9} Blakley raises two assignments of error on appeal. Blakley's first assignment of error is as follows:

THE TRIAL COURT ERRED BY FINDING THAT THERE WERE NO MITIGATING FACTORS WHEN SENTENCING MR. BLAKLEY.

{¶ 10} Blakley asserts that the record does not support his sentence "[b]ecause

the trial court failed to recognize even one mitigating factor in the face of a multitude of such factors." Blakley argues that, although the trial court is not required to specifically state its analysis of the factors on the record, the court cannot simply state that there are no mitigating factors "when those factors exist." Thus, Blakley contends that the trial court erred by imposing a seven-year prison sentence and that the sentence should be "vacated."

{¶ 11} Blakley asserts that R.C. 2929.12(C)(1) applied, in that the victim facilitated the offense, yet the trial court found no mitigating evidence. Blakley also asserts that the trial court had before it evidence that he did not expect or want to cause any harm to the victim, such that R.C. 2929.12(C)(3) applied as a mitigating factor. Further, Blakley asserts that he and the victim "had a close relationship," that he "showed genuine remorse for his conduct," and that "the victim was at least partly at fault for choosing to get into the car with" him, citing R.C. 2929.12(C)(4). Finally, Blakley asserts that he has the support of the victim's family.

{¶ 12} The State responds that "a careful reading of the transcript" shows that the trial court's finding that there were no mitigating factors related to Blakley's history of criminal convictions and compliance while on court supervision. The State asserts that the court did consider Blakley's remorse. According to the State, "if it is somehow determined that the trial court did not consider mitigating factors," any error was harmless, as the error was not prejudicial to Blakley based on the entire record at the sentencing hearing, which supported a seven-year sentence.

{¶ 13} Regarding the mitigating factors that Blakley claims the court ignored, the State argues that the victim did not induce Blakley to drink alcohol, to drive the car drunk

with three passengers, or to cause the crash; Blakley "did that all alone." The State describes Blakley's argument that the victim somehow induced or facilitated the crime because she did not wear a seatbelt as "total speculation." The State asserts that to "argue that [Blakley] climbed into a vehicle, unlicensed, and drove it drunk but did not expect to cause physical harm to anyone only highlights the likelihood of recidivism, as clearly [Blakley] has not demonstrated any understanding of the risks of drunk driving." According to the State, "drunk driving puts the entire public at risk," and "drunk driving with someone you love in the car is not a mitigating factor, it is an aggravating factor."

{¶ 14} Regarding the seriousness factors set forth in R.C. 2929.12(B), the State asserts that the significant physical injury to the victim "cannot be understated; she is in a body-shaped tomb for as long as she lives. The life-shattering impact of her condition on her life and the lives of her mother, sisters, and children is immeasurable." The State also argues that Blakley's relationship with the victim facilitated the offense, as she trusted him with her life and her child's life. According to the State, none of the factors that make the crime less serious applied.

{¶ 15} Regarding recidivism, the State asserts that "at least three out of the five factors" demonstrate that Blakley is likely to commit future crimes. Specifically, he was on community control at the time of the offense (with a condition that he abstain from alcohol use), and he had a prior criminal history that included two felony convictions and convictions for both OVI and driving with a suspended license. The State argues that Blakley's commission of these crimes demonstrated that he had not been rehabilitated and had not responded favorably to criminal sanctions. The State asserts that, other than his remorse, there was no factor to suggest that Blakley was not likely to commit

future crime.

{¶ 16} In reply, Blakley asserts that the trial court did not limit its finding of no mitigating factors in any way, and it found no mitigating factors in the entire case. According to Blakley, it "is not this Court's job to decide that a seven-year sentence is appropriate based on all the evidence that the trial court had before it. The State is asking this Court to become the sentencing judge and to hand down a seven-year sentence because the evidence seemed to support it. Such is not the mandate of this Court." Finally, Blakley asserts that the crucial question is whether or not the trial court would have sentenced him to a prison term "if it had properly considered his remorse."

{¶ 17} As this Court has noted:

When reviewing felony sentences, appellate courts apply the standard of review found in R.C. 2953.08(G)(2), not an abuse of discretion standard. *State v. Marcum,* 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 9. Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it "clearly and convincingly" finds either (1) that the record does not support certain specified findings or (2) that the sentence imposed is contrary to law.

"The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum * * * sentences." *State v. King,* 2013-Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d Dist.). However, a trial court must consider the statutory criteria that apply to every felony offense,

including those set out in R.C. 2929.11 and R.C. 2929.12. *State v. Leopard*, 194 Ohio App.3d 500, 2011-Ohio-3864, 957 N.E.2d 55, ¶ 11 (2d Dist.), citing *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 38. . * * * R.C. 2929.12(B) sets forth nine factors indicating that an offender's conduct is more serious than conduct normally constituting the offense, whereas R.C. 2929.12(C) sets forth four factors indicating that an offender's conduct is less serious than conduct normally constituting the offense. Similarly, R.C. 2929.12(D) and (E) each lists five factors that trial courts are to consider regarding an offender being more or less likely to commit future crimes.

*State v. Roberts*, 2d Dist. Montgomery No. 2018-CA-27, 2019-Ohio-49, ¶ 6-7.

{¶ 18} We conclude that, contrary to his assertions, Blakley's felony sentence is not unsupported by the record. At the start of the sentencing hearing, the court indicated that it considered the principles and purposes of sentencing, as set forth in R.C. 2929.11(A). Pursuant to R.C. 2929.12(B)(2) and (6), the court considered the extensive harm to the victim, and that Blakley's relationship with her facilitated the offense. Pursuant to R.C. 2929.12(D), the court considered that Blakley was on post-release control at the time of the offense, had a history of criminal convictions, had not responded favorably to previously imposed consequences, and had a demonstrated pattern of alcohol abuse.

{¶ 19} Regarding Blakley's assertion that the court found that there were no mitigating factors applicable to him, we conclude that he mischaracterizes the record. The court considered Blakley's entire criminal history, which included a prior OVI

conviction, a prior conviction for driving under suspension, no valid license on the day of the accident, a criminal damaging conviction in 2004, an assault conviction in 2007, and an abduction conviction in 2009. The court considered that Blakley's history "indicates that not only do you have the prior felonies; that you have felony consequences; you get put on community control and then you violate. That establishes you're not being rehabilitated; you're not doing what you're supposed to be doing. * * * You're put on community control to abstain from alcohol, and you're still drinking." The court also noted that Blakley reported drinking after the accident. After the thorough review of Blakley's conduct from past to present, the court determined that it was "not aware of any mitigating factors under the Revised Code in this case *given the history that I've just gone over,* as well as the community control violation and the significant harm to the victim."

{¶ 20} The sentencing transcript further reflects that the court considered Blakley's remorse, noting that he "would take everything back from that day" and would "never want this kind of harm on any person, not to mention the person that you love and care for deeply." The court recognized that there was blame on the victim as well, that she was not wearing a seatbelt, and that she knew Blakley had been drinking, but concluded that those facts did not "take away from [his] driving and drinking" with two innocent children in the car. The transcript reflects that Blakley's "inability to make changes" was significant to the court. Any weight to be given to the factor of remorse was solely within the trial court's discretion. Notably, according to the PSI, Blakley resolved to stop drinking as a result of the accident and failed to do so. We conclude that the record reflects that the court thoroughly considered all relevant factors, and the record supports Blakley's sentence. Accordingly, Blakley's first assignment of error is overruled.

{¶ 21} Blakley's second assignment of error is as follows:

THE TRIAL COURT ERRED BY FINDING MR. BLAKLEY GUILTY ON THE MISDEMEANOR CHARGES WITHOUT AN EXPLANATION OF CIRCUMSTANCES.

{¶ 22} Blakley asserts that the trial court failed to comply with R.C. 2937.07 because it found him guilty without an explanation of circumstances of his offense. The State filed a notice of conceded error with respect to this assignment of error, noting that the trial court did not obtain an explanation of circumstances before finding Blakley guilty of the two misdemeanor counts on his plea of no contest. The State further concedes that these two convictions should be reversed and remanded for further prosecution.

{¶ 23} R.C. 2937.07 provides in part: "A plea to a misdemeanor offense of 'no contest' or words of similar import shall constitute an admission of the truth of the facts alleged in the complaint and that the judge or magistrate may make a finding of guilty or not guilty from the explanation of circumstances of the offense."

{¶ 24} This Court has previously analyzed the "explanation of circumstances" requirement as follows:

The Supreme Court of Ohio has held that "the provision in R.C. 2937.07 requiring an explanation of circumstances following a plea of no contest [in a misdemeanor case] has not been superseded by the enactment of Crim.R. 11 because the statutory provision confers a substantive right." *Cuyahoga Falls v. Bowers*, 9 Ohio St.3d 148, 151, 459 N.E.2d 532 (1984); *see also Girard v. Giordana*, 155 Ohio St.3d 470, 2018-Ohio-5024, 122 N.E.3d 151, ¶ 15 ("[T]he explanation-of-circumstances

requirement exists to provide an extra layer of procedural protection to the defendant.").

"The statutorily required explanation of circumstances does not mandate that sworn testimony be taken but instead only contemplates some explanation of the facts surrounding the offense [so] that the trial court does not make a finding of guilty in a perfunctory fashion." *State v. Jasper*, 2d Dist. Greene No. 2005 CA 98, 2006-Ohio-3197, ¶ 32, citing *Bowers* at 151. The explanation "necessarily involves, at a minimum, some positive recitation of facts which, if the court finds them to be true, would permit the court to enter a guilty verdict and a judgment of conviction on the charge to which the accused has offered a plea of no contest." *State v. Osterfeld*, 2d Dist. Montgomery No. 20677, 2005-Ohio-3180, ¶ 6.

The State bears the burden of ensuring that an explanation of circumstances appears on the record before a conviction is entered. *State v. Schornak*, 2015-Ohio-3383, 41 N.E.3d 168, ¶ 8 (2d Dist.). However, it is immaterial who actually states the explanation on the record. *Id.* Regardless of who states the explanation of circumstances, the record must affirmatively demonstrate that a sufficient explanation of circumstances was made. *Id.*

An explanation that merely restates the statutory elements of the offense is insufficient. *State v. Wieckowski*, 2d Dist. Clark No. 2010-CA-111, 2011-Ohio-5567, ¶ 4. And, the explanation of circumstances requirement "is not satisfied by a presumption that the court was aware of

facts which may be gleaned from a review of 'the available documentation.' " *State v. Keplinger*, 2d Dist. Greene No. 98-CA-24, 1998 WL 864837, *3, quoting *Bowers* at 151.

Many Ohio appellate districts permit a waiver of the explanation of circumstances requirement. *See Schornak* [at] ¶ 12 (citing cases from other districts that permit waiver of the explanation of circumstances); *State v. Fields*, 2017-Ohio-400, 84 N.E.3d 193 (2d Dist.). Nevertheless, we have held that a defendant's stipulation of guilt upon pleading no contest does not, by itself, waive the requirement. *Schornak* at ¶ 12; *State v. Roland*, 2d Dist. Champaign No. 2005 CA 30, 2006-Ohio-3517.

(Footnote omitted.) *State v. Glowney*, 2d Dist. Montgomery Nos. 27896, 27897, 2019-Ohio-3390, ¶ 57-61.

**{¶ 25}** We agree with the parties that the trial court erred in finding Blakley guilty of Counts 2 and 3 without an explanation of circumstances as to the misdemeanor offenses. In other words, for those offenses, the court was not permitted to find Blakley guilty based upon the facts set forth in the indictment as read into the record by the court; an explanation of circumstances was required. In the absence thereof, the court found Blakley guilty in a "perfunctory fashion." *Jasper*, 2d Dist. Greene No. 2005 CA 98, 2006-Ohio-3197, ¶ 32, citing *Bowers* at 151.

**{¶ 26}** The court in *Girard,* 155 Ohio St.3d 470, 2018-Ohio-5024, 122 N.E.3d 151, determined that a failure to obtain the required explanation of circumstances prior to finding a defendant guilty was a "procedural error," and the matter must be remanded to the trial court to make a finding of guilt or innocence based upon an explanation of

circumstances. *Id.* at ¶ 21-24. Accordingly, Blakley's second assignment of error is sustained.

{¶ 27} The judgment of the trial court is reversed as to Blakley's convictions on Counts 2 and 3, and the matter is remanded for further proceedings on those counts consistent with this opinion. The judgment of the trial court is affirmed as to Count 1.

. . . . . . . . . . .

TUCKER, P.J. and HALL, J., concur.

Copies sent to:

Janna L. Parker
John A. Fishcer
Hon. Stacy M. Wall