[Cite as *State v. O'Connor*, 2020-Ohio-4402.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28259 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-541 |
| | : | |
| DANIEL BRIAN O'CONNOR | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 11th day of September, 2020.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by SARAH E. HUTNIK, Atty. Reg. No. 0095900, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

APRIL F. CAMPBELL, Atty. Reg. No. 0089541, 545 Metro Place South, Suite 100, Dublin, Ohio 43017
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant Daniel Brian O'Connor appeals his conviction for the following offenses: Count I, aggravated burglary, in violation of R.C. 2911.11(A)(1), a felony of the first degree; Count II, kidnapping (felony or flight), in violation of R.C. 2905.01(A)(2), a felony of the first degree; Count III, kidnapping (sexual activity), in violation of R.C. 2905.01(A)(4), a felony of the first degree; Counts IV and V, rape (by force or threat of force), in violation of R.C. 2907.02(A)(2), felonies of the first degree; Count VI, felonious assault (deadly weapon), in violation of R.C. 2903.11(A)(2), a felony of the second degree; and Count VII, domestic violence (knowingly) (one prior), in violation of R.C. 2919.25(A), a felony of the fourth degree. Additionally, Counts I, II, and VII were accompanied by two-year body armor specifications, in violation of R.C. 2929.14(D)(1)(d) and R.C. 2941.1411, of which O'Connor was found guilty.. O'Connor filed two timely notices of appeal on January 10, 2019 (Montgomery App. No. 28258) and January 11, 2019 (Montgomery App. No. 28259). We dismissed O'Connor's appeal in Case No. 28258 as being a duplicate appeal.

{¶ 2} O'Connor and the victim, A.G., had previously dated and had two children together, but were no longer in a relationship at the time the offenses at issue were committed.

{¶ 3} On the morning of February 9, 2018, O'Connor sent A.G. a series of harassing text messages, which she ignored. Shortly thereafter, O'Connor arrived at A.G.'s apartment as she was getting ready to take their children to daycare. O'Connor appeared to be intoxicated. A.G. told O'Connor to leave, and she took the children to daycare.

{¶ 4} Upon returning to her apartment, A.G. discovered that O'Connor had gained

access to her residence and was in the children's bedroom wearing a bulletproof vest. At that point, O'Connor pushed A.G. against a couch, choked her, and told her that she was going to die. O'Connor then tried to kiss A.G. and pushed her down the hallway of her apartment toward her bedroom. Once in the bedroom, O'Connor ordered A.G. to take off her clothes. When he judged A.G. not to be disrobing quickly enough, O'Connor began to choke her again. A.G. was able to run out of her apartment into the parking lot, where she yelled for help. A.G. was naked. O'Connor chased her outside, grabbed her by her hair, slammed her head into the ground, and choked her.

{¶ 5} O'Connor then dragged A.G. back into the apartment and barricaded the door to prevent her from escaping again. O'Connor tried to force A.G. to consume alcohol and forced her back into the bedroom. When A.G. resisted, O'Connor swung a knife at her but missed.

{¶ 6} Once back in the bedroom, O'Connor informed A.G. that she was going to give him another baby and forced her down onto the bed face first. When A.G. begged O'Connor to stop, he forcefully performed oral sex on her. When he was finished performing oral sex, O'Connor put his penis in A.G.'s vagina and ejaculated. O'Connor then held A.G. with him on the bed for a short period of time. Shortly thereafter, the police arrived and knocked on the door of A.G.'s apartment. O'Connor forced a section of a comforter into A.G.'s mouth so she could not scream. Eventually, the police entered the apartment and discovered A.G. shaking and crying.

{¶ 7} On February 20, 2018, O'Connor was indicted for the offenses described above. At his arraignment on February 23, 2018, O'Connor stood mute, and the trial court entered a plea of not guilty on his behalf.

{¶ 8} On March 26, 2018, O'Connor filed a plea of not guilty by reason of insanity and a request for a competency evaluation. On March 28, 2018, the trial court issued separate entries ordering a mental competency evaluation and a sanity evaluation for O'Connor. On April 27, 2018, the trial court issued an order finding O'Connor competent to stand trial. On July 2, 2018, O'Connor filed a motion to suppress any statements he made to the police as well as any physical evidence they recovered. On August 22, 2018, the trial court granted O'Connor's motion to suppress as it related to statements he made to police after he was arrested and while he was intoxicated; the court found that, in light of O'Connor's intoxication, the State failed to meet its burden of proving that O'Connor consented to talk to the police knowingly, intelligently, and voluntarily. The trial court also suppressed O'Connor's DNA evidence because he was intoxicated when he gave the police verbal consent to swab the inside of his mouth.

{¶ 9} On October 16, 2018, O'Connor filed a second motion to suppress "any and all physical evidence obtained via search warrant" for O'Connor's DNA. On October 26, 2018, the trial court denied O'Connor's second motion to suppress, finding that the search warrant that the police used to obtain O'Connor's second DNA sample was supported by probable cause and did not rely on any evidence with respect to the first swab for his DNA, which earlier had been found inadmissible.

{¶ 10} On November 29, 2018, O'Connor pled guilty to all of the counts in the indictment; the trial court accepted his pleas and found him guilty as charged. The trial court ordered a presentence investigation report (PSI).

{¶ 11} On December 20, 2018, the trial court sentenced O'Connor to the following prison sentences: Count I, aggravated burglary, 11 years; Count II, kidnapping, 11 years;

Count III, kidnapping, 11 years; Counts IV and V, rape, 11 years each; Count VI, felonious assault, 8 years; and Count VII, domestic violence, 18 months. The trial court ordered that Counts II, III, IV, and V be served consecutively to one another, while the remaining counts would be served concurrently to Count II, III, IV, and V. The trial court also merged the three body armor specifications into one two-year sentence, to be served consecutively to the other sentences. The aggregate sentence was 46 years in prison. Based upon the nature of his offenses, O'Connor was designated both a Tier II and a Tier III sex offender.

{¶ 12} O'Connor now appeals his conviction.

{¶ 13} Because they are interrelated, O'Connor's first three assignments of error will be discussed together:

THE TRIAL COURT ERRED IN FAILING TO MERGE O'CONNOR'S OFFENSES TOGETHER BECAUSE HE HAD ONE ANIMUS, AND ENGAG[ED] IN ONE CONTINUOUS COURSE OF CONDUCT.

THE TRIAL COURT ERRED IN FAILING TO MERGE THE COUNTS WITH THE ATTACHED BODY-ARMOR SPECIFICATIONS: HIS AGGRAVATED BURGLARY COUNT (COUNT I), HIS KIDNAPPING COUNT (COUNT II), AND HIS DOMESTIC VIOLENCE COUNT (COUNT VII).

THE TRIAL COURT ERRED IN FAILING TO MERGE O'CONNOR'S SEXUAL ACTIVITY KIDNAPPING OFFENSE WITH HIS RAPE COUNTS.

{¶ 14} In his first assignment, O'Connor contends that the trial court erred when it failed to merge all of his convictions, because he committed all of the offenses with a

single animus. In his second assignment, O'Connor argues that the counts with the body-armor specifications should have been merged (Count I, aggravated burglary; Count II, kidnapping; and Count VII, domestic violence). In his third assignment, O'Connor argues that his conviction for kidnapping (to engage in sexual activity) should have merged with his two rape convictions.

{¶ 15} R.C. 2941.25, Ohio's allied offenses statute, provides:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 16} The Ohio Supreme Court clarified the applicable standard when determining whether offenses merge as allied offenses of similar import in *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892:

Rather than compare the elements of two offenses to determine whether they are allied offenses of similar import, the analysis must focus on the defendant's conduct to determine whether one or more convictions may result, because an offense may be committed in a variety of ways and the offenses committed may have different import. No bright-line rule can

govern every situation.

As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when the defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.

*Id.* at ¶ 30-31.

{¶ 17} In *State v. Wood*, 2d Dist. Montgomery No. 26134, 2016-Ohio-143, this Court stated:

[T]he Ohio Supreme Court addressed the allied-offense issue again in *State v. Earley*, [145 Ohio St.3d 281, 2015-Ohio-4615, 49 N.E.3d 266]. There the majority characterized the analysis in its earlier [*State v.*] *Johnson* [128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061] lead opinion as "largely obsolete." *Id.* at ¶ 11. The *Earley* court instead embraced *Ruff*, which, as noted above, considers a defendant's conduct, his animus, and the import or significance of his offenses. Applying *Ruff*, the *Earley* court concluded that misdemeanor OVI and felony aggravated vehicular assault "are offenses of dissimilar import and significance that are to be punished cumulatively." *Earley* at ¶ 20. For purposes of our analysis here, we note that a defendant bears the burden of establishing entitlement to merger, and

we review a trial court's ruling on the issue de novo. *State v. LeGrant*, 2d Dist. Miami No. 2013-CA-44, 2014-Ohio-5803, ¶ 15.

* * *

We reach the same conclusion under the *Ruff* standard, which the Ohio Supreme Court applied in *Earley*.   We see nothing in *Ruff* that alters or undermines the foregoing analysis about [the defendant's] commission of murder and aggravated robbery involving the same conduct committed with the same animus.   For the reasons set forth above, we conclude that the two offenses were not committed separately and were not committed with a separate animus or motivation.   These findings remain pertinent under *Ruff*, which, as noted above, provides that offenses do not merge if "(1) the offenses are dissimilar in import or significance—in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation." *Ruff* at ¶ 25 [and] ¶ 30-31.

*Id*. at ¶ 54, quoting *State v. McGail*, 2015-Ohio-5384, 55 N.E.3d 513, ¶ 51, 60 (2d Dist.).

{¶ 18} An appellate court applies a de novo standard of review in reviewing a trial court's R.C. 2941.25 merger determination. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28.   "The defendant bears the burden of establishing his entitlement to the protection provided by R.C. 2941.25 against multiple punishments for a single criminal act." *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, ¶ 18.

{¶ 19} With respect to the issue of merger, the trial court made the following

findings at O'Connor's sentencing hearing:

> * * * [A]s to the issues of merger, which are important because of their legal significance, the Court would note that the body armor specifications, which are attached to Count I, Count III [sic], and Count VII would necessarily merge into a single two-year body armor specification.
>
> And as to the rape charges, the information available to the Court is that there were two separate and distinct rapes that occurred. And as a result of that there was an oral rape as well as a vaginal rape and those rape charges would not merge.
>
> As to the kidnapping, the Court finds that the kidnapping – and in making this determination, the Court did read and review and study the *Ruff* decision by the Supreme Court of Ohio and considered it for each of the individual charges, the conduct, the animus and the import.
>
> And the kidnapping, I see two instances of kidnapping. One, where the victim ran from the house and Mr. O'Connor drug her back to the house so that would be one instance of kidnapping and then after the rapes had concluded, his holding her in the bedroom until the police arrived would be a separate and distinct kidnapping that are separate and apart from the confinement related to the rapes themselves.
>
> The aggravated burglary, from my perspective, the conduct and import of that is vastly different than the crimes involving the rape and the kidnapping and the other acts of violence because that's the entry into the house and the sort of breach of the homestead.

And then the felonious assault was with the knife, the attempted stabbing of the victim.

And then the domestic violence was related to the punching and so forth during the incident.

And so, although it was long continuous sequence of events, the Court can see that there are, in fact, separate and distinct offenses that occurred during that course of conduct as to which there are clear demarcations as to conduct, animus and import making merger of the underlying offenses inappropriate but for the body armor specifications.

Sentencing Tr. 38-39.

{¶ 20} As previously stated, O'Connor was convicted of the offenses, which are listed with the definition:

**Aggravated burglary** (R.C. 2911.11(A)(1)): "(A) No person, by force, stealth, or deception, shall trespass in an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense if any of the following apply: (1) The offender inflicts, or attempts or threatens to inflict physical harm on another[.]"

**Kidnapping** (R.C. 2905.01(A)(2)-felony or flight): "(A) No person, by force, threat, or deception, * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes: (1) To hold for ransom, or as a shield or hostage[.]"

**Kidnapping** (R.C. 2905.01(A)(4)-sexual activity): "(A) No person, by force,

threat, or deception, * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes: (4) To engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will[.]"

**Rape** (R.C. 2907.02(A)(2)-by force or threat of force): "(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."

**Felonious assault** (R.C. 2903.11(A)(2)-deadly weapon): "(A) No person shall knowingly do either of the following: (2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance."

**Domestic violence** (R.C. 2919.25(A)-knowingly): "(A) No person shall knowingly cause or attempt to cause physical harm to a family or household member."

{¶ 21} Based upon the record before us, the trial court did not err when it refused to merge any of O'Connor's convictions. The record established that, on the morning of February 9, 2018, A.G. returned home from taking her children to daycare to find an intoxicated O'Connor in her children's bedroom wearing a bulletproof vest, after she had asked him to leave earlier that morning. As soon as O'Connor saw A.G., he pushed A.G. against a couch, choked her, and told her that she was going to die. "Physical harm to persons" is statutorily defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). Thus, the record established

that O'Connor illegally gained access to A.G.'s apartment and caused her physical harm the very moment she returned home and found him there.

{¶ 22} O'Connor then tried to kiss A.G. and pushed her down the hallway of her apartment toward her bedroom. Once in the bedroom, O'Connor ordered A.G. to take off her clothes; he choked A.G. again when he concluded that she was not disrobing quickly enough. A.G. was able to run out of her apartment, naked, into the parking lot, where she yelled for help. O'Connor chased her outside, grabbed her by her hair, slammed her head into the ground, and choked her, thereby committing the separate and distinct offense of domestic violence.

{¶ 23} O'Connor then dragged A.G. back into her apartment and barricaded the door to prevent her from escaping again, thereby kidnapping A.G. Once back inside the apartment, O'Connor forced her back into the bedroom. When A.G. resisted, O'Connor swung a knife at her but missed, thereby committing felonious assault with deadly weapon.

{¶ 24} Next, O'Connor dragged A.G. back to her bedroom, informed her that she was going to give him another baby, and forced her down onto the bed. When A.G. begged O'Connor to stop, he forcefully performed oral sex on her. When he was finished performing oral sex, O'Connor put his penis in A.G.'s vagina. Therefore, the trial court properly found that the rapes were committed separately, notwithstanding that they occurred close in time. The trial court did not err in refusing to merge O'Connor's rape offenses for purposes of sentencing, nor did it err by refusing to merge the rape offenses with any of O'Connor's other convictions.. *See State v. McLoughlin*, 2d Dist. Champaign No. 2017-CA-22, 2018-Ohio-2426, ¶ 45; *see also State v. Nicholas,* 66 Ohio St.3d 431,

435, 613 N.E.2d 225 (1993) (vaginal intercourse, cunnilingus, and digital penetration are "three separate crimes involving distinct sexual activity. * * * Since each constitutes a separate crime with a separate animus, they do not constitute allied offenses of similar import.").

{¶ 25} When O'Connor finished sexually assaulting A.G., he forced her against her will to lay in bed with him. When the police arrived and announced their presence, O'Connor held her in the bed with him and forced a section of the comforter into her mouth so the police could not hear her screaming, thereby committing a second separate and distinct kidnapping which was not subject to merger with any of the other counts in the indictment.

{¶ 26} In his brief, O'Connor argues that, at the very least, his convictions for kidnapping should have merged with his rape convictions. With respect to the offenses of rape and kidnapping, the Ohio Supreme Court has acknowledged that "implicit within every forcible rape * * * is a kidnapping" because the victim's liberty is restrained during the act of forcible rape. *State v. Logan*, 60 Ohio St.2d 126, 130, 397 N.E.2d 1345 (1979). In *Logan*, the court provided the following guidelines for determining whether kidnapping and another offense are allied offenses that should merge prior to sentencing, stating:

> (a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate

convictions;

(b) Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions.

*Id.* at syllabus.

{¶ 27} Applying these guidelines, the Ohio Supreme Court held in *Logan* that the offender's conduct in forcing the victim into an alley before raping her at knife point was committed without a separate animus. The court found that the movement was slight, the detention brief, and the victim was released immediately after the commission of the underlying crime, compelling the court's conclusion that the kidnapping was incidental to the rape. *Id.* at 135.

{¶ 28} *Logan* is distinguishable from the facts in this case. Specifically, in regard to the first kidnapping, O'Connor committed the offense when he ran outside, dragged A.G. back inside the apartment, and barricaded the door in an effort to keep her from running away again. Once inside the apartment, O'Connor tried to stab A.G., but missed her. After trying to stab A.G., he took her back to the bedroom where he orally and vaginally raped her. *After* the rapes had concluded, O'Connor did not release A.G., as the defendant did in *Logan*. Rather, O'Connor held her in bed against her will and stuffed a section of comforter in her mouth so the police could not hear her when they arrived. Simply put, the kidnappings in this case were not incidental to the rapes. Therefore, the kidnapping offenses and the rape offenses were committed with a separate animus and were not subject to merger.

{¶ 29} Finally, there was no reason for Counts I, II, and VII, to merge simply because they were each accompanied by a two-year body armor specification. As reasoned above, O'Connor's convictions for aggravated burglary (Count I), kidnapping (Count II), and domestic violence (Count VII) were committed with a separate and distinct animus as to each and therefore were not subject to merger. Accordingly, the trial court did not err when it refused to merge any of O'Connor's convictions.

{¶ 30} O'Connor's first, second, and third assignments of error are overruled.

{¶ 31} O'Connor's fourth and final assignment of error is:

THE RECORD DOES NOT SUPPORT THE TRIAL COURT'S IMPOSITION OF THE MAXIMUM CONSECUTIVE SENTENCES ON THIS FIRST-TIME FELONY OFFENDER.

{¶ 32} O'Connor argues that the record does not support the trial court's decision to impose maximum and consecutive sentences, because he was a first-time felony offender.

{¶ 33} O'Connor did not object to the imposition of consecutive sentences in the trial court. Accordingly, we review the trial court's imposition of consecutive sentences for plain error. *State v. Brewer*, 2017-Ohio-119, 80 N.E.3d 1257 (2d Dist.). In order to constitute plain error, the error must be an obvious defect in the trial proceedings, and the error must have affected substantial rights. *State v. Norris*, 2d Dist. Montgomery No. 26147, 2015-Ohio-624, ¶ 22; Crim.R. 52(B). Plain error should be noticed "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus; *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459,

38 N.E.3d 860, ¶ 23.

## I. Imposition of Maximum Sentences

**{¶ 34}** As this Court has previously noted:

"The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences." *State v. King,* 2013-Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d Dist.). However, in exercising its discretion, a trial court must consider the statutory policies that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12. *State v. Leopard*, 194 Ohio App.3d 500, 2011-Ohio-3864, 957 N.E.2d 55, ¶ 11 (2d Dist.), citing *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 38.

*State v. Armstrong*, 2d Dist. Champaign No. 2015-CA-31, 2016-Ohio-5263, ¶ 12.

**{¶ 35}** R.C. 2929.11 requires trial courts to be guided by the overriding principles of felony sentencing. Those purposes are "to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). The court must "consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." *Id.* R.C. 2929.11(B) further provides that "[a] sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing * * *, commensurate with and not demeaning to the seriousness of the

offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."

{¶ 36} R.C. 2929.12(B) sets forth nine factors indicating that an offender's conduct is more serious than conduct normally constituting the offense. These factors include whether the physical or mental injury to the victim was exacerbated because of the physical or mental condition of the victim; serious physical, psychological, or economic harm suffered by the victim as a result of the offense; whether the offender's relationship with the victim facilitated the offense; and whether the offender committed the offense for hire or as a part of an organized criminal activity.

{¶ 37} R.C. 2929.12(C) sets forth four factors indicating that an offender's conduct is less serious than conduct normally constituting the offense, including whether the victim induced or facilitated the offense, whether the offender acted under strong provocation, whether, in committing the offense, the offender did not cause or expect to cause physical harm to any person or property, and the existence of substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense. R.C. 2929.12(D) and (E) each lists five factors that trial courts are to consider regarding the offender's likelihood of committing future crimes. Finally, R.C. 2929.12(F) requires the sentencing court to consider the offender's military service record.

{¶ 38} In reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 9. Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it "clearly and convincingly" finds either (1) that the record does not support certain

specified findings or (2) that the sentence imposed is contrary to law.

{¶ 39} At the sentencing hearing, the trial court stated that it had considered the purposes and principles of sentencing and the seriousness and recidivism factors in the Revised Code. Sentencing Tr. 39.

{¶ 40} As previously stated, O'Connor was sentenced as follows:  Count I, aggravated burglary, 11 years in prison; Count II, kidnapping, 11 years; Count III, kidnapping,11 years; Counts IV and V, rape, 11 years each; Count VI, felonious assault, 8 years; and Count VII, domestic violence, 18 months.  The trial court ordered that Counts II, III, IV, and V be served consecutively to one another, and the remaining counts be served concurrently to those counts.  The trial court also merged the three two-year body armor specifications, for an aggregate sentence of 46 years in prison.

{¶ 41} The maximum sentences authorized by law --, the eleven-year sentences for each count of rape and kidnapping imposed by the trial court -- were within the permissible statutory range for a conviction for those offenses, all felonies of the first degree.  We are not persuaded that the trial court's imposition of maximum sentences was unwarranted simply because O'Connor was a first-time felony offender. *See State v. Watson*, 2d Dist. Clark No. 2019-CA-35, 2020-Ohio-1146, ¶ 17-18.  We previously have rejected the suggestion that a defendant's status as a first-time offender provides, in and of itself, a proper basis for comparison of sentences imposed in different cases. *See Armstrong*, 2d Dist. Champaign No. 2015-CA-31, 2016-Ohio-5263, at ¶ 42.  "Many factors enter into a sentencing determination in each case, and sentences cannot reasonably be compared to one another in this manner." (Citations omitted.) *Id.*

## II. Imposition of Consecutive Sentences

{¶ 42} In general, it is presumed that prison terms will be served concurrently. R.C. 2929.41(A); *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 16, ¶ 23 ("judicial fact-finding is once again required to overcome the statutory presumption in favor of concurrent sentences"). However, after determining the sentence for a particular crime, a sentencing judge has discretion to order an offender to serve individual counts of a sentence consecutively to each other or to sentences imposed by other courts. R.C. 2929.14(C)(4) permits a trial court to impose consecutive sentences if it finds that (1) consecutive sentencing is necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) any of the following applies:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 43} At disposition, the trial court stated the following in regard to the imposition of consecutive sentences:

> * * * [I]n imposing consecutive sentences, the Court makes the finding that those consecutive sentences are necessary to protect the public from future crime and to punish the offender and the consecutive sentences are not disproportionate to the seriousness of Mr. O'Connor's conduct and to the danger that he poses to the public.
>
> I also make the finding that at least two of the multiple offenses were committed as part of one or more courses of conduct and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct and that the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

Sentencing Tr. 41.

{¶ 44} Additionally, before it imposed sentence, the trial court stated that it had received and reviewed O'Connor's PSI. The trial court also stated it had reviewed letters from A.G. and her family and O'Connor's family regarding his potential sentence. Lastly, the trial court stated that it had reviewed sentencing memoranda filed by both parties.

{¶ 45} As previously stated, O'Connor pled guilty to series of criminal offenses surrounding the kidnapping, felonious assault, and rapes of A.G. after he illegally gained access to her apartment. Accordingly, we conclude that the trial court's findings were

supported by the record. Furthermore, the record reflects that, in ordering that the maximum sentences for O'Connor's rape and kidnapping offenses be served consecutively, the trial court strictly adhered to the language of R.C. 2929.14(C)(4)(b), finding consecutive sentences "necessary to protect the public from future crime and to punish" O'Connor and "not disproportionate to the seriousness of Mr. O'Connor's conduct and to the danger he poses to the public," and further finding that the offenses "were committed as part of one or more courses of conduct" and the harm caused thereby "was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct." Accordingly, the trial court's maximum and consecutive sentences findings were not clearly and convincingly unsupported by the record or contrary to law.

{¶ 46} O'Connor's fourth assignment of error is overruled.

{¶ 47} All of O'Connor's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

TUCKER, P.J. and FROELICH, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Sarah E. Hutnik
April F. Campbell
Mary L. Wiseman